**STATE of Alaska, Petitioner,**

v.

**William T. JOHNSON, Respondent.**

No. S–616.

Supreme Court of Alaska.

May 30, 1986.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Mary Greene and William Davies, Asst. Public Defenders, Fairbanks, for respondent.

Before RABINOWITZ, C.J., and MATTHEWS, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case comes before the court for a second time, the second degree murder conviction of William Johnson having been reversed twice previously by the court of appeals because of inadequate jury instructions. We find that the instructions were adequate. Therefore, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

William Johnson fatally shot his adopted sister, Joyce Ann, in the village of Nulato. He was intoxicated at the time. Joyce Ann was outside the family cabin, approaching the front door, when a shot fired by William from inside the cabin went through the door, striking the girl in the head. William told police that he did not intentionally shoot Joyce Ann and that he had not known that anyone was outside the front door.

After presentation of the evidence, Judge Blair instructed the jury on, among other things, second degree murder [1] (extreme indifference murder) and on the lesser in-

---

1. The second degree murder instruction reads:

A person commits the crime of murder in the second degree if he intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life.

In order to establish the crime of murder in the second degree, it is necessary for the state to prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Nulato, in the Fourth Judicial District, State of Alaska, and on or about the 8th day of March, 1981;

Second, that William T. Johnson intentionally performed an act, to wit: discharging a firearm through the door of Andrew Johnson's residence;

Third, that defendant's act caused the death of Joyce Ann Johnson; and

Fourth, the act was performed under circumstances manifesting an extreme indifference to the value of human life.

cluded offenses of manslaughter and criminally negligent homicide. Judge Blair defined "recklessly" [2] for the jury in connection with these lesser included offenses. Judge Blair refused the defense's request that the jury be instructed on Johnson's awareness of the risk.

While the jury was deliberating, it asked the court for "the example of extreme indifference to the value of human life that was discussed during summation arguments...." Judge Blair responded by giving the jury a supplemental instruction, over defendants objection.[3]

Johnson, convicted of second degree murder, a violation of AS 11.41.110(a)(2),[4] appealed his conviction. The court of appeals reversed on the ground that the trial court "erred in telling the jury that Johnson's subjective awareness of the risk to his victim was irrelevant to the charge of second degree murder...." *Johnson v. State*, MO & J No. 279 at 2 (Alaska App. Jan. 26, 1983).

This court granted the state's petition for hearing and reversed, holding that "[n]othing in the record lends support to the Court of Appeals' description of what the Superior Court told the jury." *State v. Johnson*, MO & J No. 147 at 5 (Alaska Feb. 1, 1984). This court expressly refused to reach the merits of the case. *Id.*

On remand, the court of appeals again reversed Johnson's conviction, relying primarily on *Neitzel v. State*, 655 P.2d 325

(Alaska App.1982); *Johnson v. State*, MO & J No. 654 (Alaska App. Aug. 8, 1984). The court of appeals discussed three main issues and held that: (1) the trial court erroneously instructed the jury on the *mens rea* for extreme indifference murder because the instruction on "recklessly" was not specifically tied to the definition of extreme indifference murder; (2) the supplemental instruction did not cure this initial error because it did not clearly inform the jury that Johnson must have been aware of the risk that his conduct could cause the death of another person for an extreme indifference murder conviction; and (3) the errors in the instruction were not harmless. *Johnson v. State*, MO & J No. 654 at 4, 5, 7.

## II. ADEQUACY OF THE JURY INSTRUCTIONS

The core dispute between the parties is whether the trial court correctly instructed the jury regarding the *mens rea* for extreme indifference murder. Johnson relies on *Neitzel v. State*, 655 P.2d 325 (Alaska App.1982) in arguing that second degree murder requires awareness of the surrounding circumstances and result of the act. He further maintains that the trial court failed to make any mention of the requisite mental state in its instructions to the jury. The state argues on the other hand, that the sum of the given instructions satisfied the law, i.e., "[t]he jury was

---

**2.** The recklessness instruction tracked the language of AS 11.81.900(a)(3). It reads:

A person acts "recklessly" with respect to a result described by the law when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and such a degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who is unaware of a risk of which he would have been aware had he not been intoxicated acts recklessly with respect to that risk.

**3.** The instruction reads:

[A]n act "performed under circumstances manifesting an extreme indifference to the value of human life" is an act which creates a very high degree of risk and which exhibits an

extreme disregard of social duty. It must be more than a criminally negligent act and more than a reckless act. The examples read to you were from the commentary to the statute and read as follows: "... [a]n example of conduct covered by this provision would be shooting through a tent under circumstances that the defendant did not know a person was inside or persuading a person to play "russian [sic] roulette."

**4.** AS 11.41.110(a)(2) reads in pertinent part:

*Murder in the Second Degree.* (a) A person commits the crime of murder in the second degree if....
(2) the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life.

told that the crime required proof of awareness of risk."

We agree with the state and hold that the trial courts' instructions as a whole were adequate to satisfy the standard established in *Neitzel*. In that case, the intoxicated defendant had fired a number of gunshots in the area around his girl friend which missed, and then fired a fatal bullet which entered her head. He was convicted of murdering his girl friend in violation of AS 11.41.110(a)(2), the same statute under which Johnson was convicted.

The court of appeals undertook to explain the state of mind associated with this type of murder through a comprehensive review of the Model Penal Code's Tentative Draft and Alaska's Revised Code. The court broke down the offense into its three constituent elements: 1) conduct; 2) surrounding circumstances; and (3) result. It concluded that the legislature, by adopting the Revised Code, intended the conduct to be "knowing" (even though the statute says "intentionally performs an act"), and the surrounding circumstances and result to be governed by "recklessness." *Neitzel*, 655 P.2d at 333. The court found support for its interpretation in the legislative comment to AS 11.41.110(a)(2).[5] The court rejected the state's arguments that the state of mind for the surrounding circumstances should be governed by an objective test, akin to criminal negligence.[6] Furthermore, it is implicit from the court's discussion that it viewed recklessness as requiring proof of a subjective state of mind. *Id.* at 326.

The court in *Neitzel* stated that jurors trying to determine if conduct resulting in a death was negligent, reckless or malicious must weigh four factors:

    1. The social utility of the actor's conduct;

    2. the magnitude of the risk his conduct creates including both the nature of foreseeable harm and the likelihood that the conduct will result in harm;

    3. the actor's knowledge of the risk; and

    4. any precautions taken to minimize the risk.

*Neitzel*, 655 P.2d at 336–37. However, the court went on to state, as suggested by the commentary to the Model Penal Code, that these concepts were all adequately conveyed to the jury by the phrase "extreme indifference to the value of human life." *Id.* at 338. This phrasing was used in the original instructions to the jury and was amplified upon by Judge Blair in the Supplemental Instruction.

It is correct that the instruction defining "recklessly," given in conjunction with the lesser included offense of manslaughter, was not repeated in the definition of extreme indifference murder. However, the definition of manslaughter required that "... the circumstances did not amount to murder in the second degree," and the Supplemental Instruction on extreme indifference murder explicitly required "... more than a reckless act." A fair reading of these instructions in their entirety "... adequately conveyed that idea [Johnson's subjective awareness of the risk] to the jury." *Neitzel*, 655 P.2d at 338.

REVERSED.

---

**5.** The Legislative Comment reads:

    Subsection (a)(2) describes conduct that is very similar to the "substantially certain" clause in subsection (a)(1). Under this provision, however, the defendant need not necessarily know that his conduct is substantially certain to cause death or serious physical injury. An example of conduct covered by this provision would be shooting through a tent under circumstances where the defendant did not know a person was inside or persuading a person to play "russian [sic] roulette." The defendant is only required to intend to perform the act; there is no requirement that he intend to cause death or that he knows that his conduct is substantially certain to cause death. 2 Senate Journal Supplement No. 47, at 10 (June 12, 1978).

**6.** The state has since conceded the correctness of the court of appeals' holding that subjective awareness of the risk is required under AS 11.41.110(a)(2). This concession is necessary to allow a clear distinction between the offenses of reckless (extreme indifference) murder and reckless manslaughter so as to avoid due process problems.