26 F.3d 131
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William T. JOHNSON, Petitioner-Appellant,
v.
Lloyd F. HAMES, Commissioner, Respondent-Appellee.
 No. 93-35475.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 6, 1994.*
Decided June 15, 1994.
 
 Before: WRIGHT, WIGGINS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 William T. Johnson, convicted of extreme-indifference second-degree murder by an Alaska state court, appeals the district court's denial of his petition for habeas corpus. Johnson asserts the trial court's jury instructions omitted an essential element of the offense, subjective awareness of risk, thus depriving him of due process of law.
 
 
 3
 We affirm. Under Alaska law, the trial court's initial and supplementary instructions to the jury that to convict Johnson of second-degree murder they had to find he acted with "extreme indifference to the value of human life" adequately expresses the calculus used to assess recklessness, and a reasonable juror would not misinterpret the court's instructions.
 
 FACTS
 A. The Crime
 
 4
 On March 8, 1981, Johnson, while intoxicated,[1] fired a .22 caliber rifle through the front door of his family's home. Unbeknownst to Johnson, when he discharged the weapon his sister was returning to the home after several hours at a local potlatch. Johnson's bullet struck her in the forehead and killed her as she approached the door. The shooting was the culmination of several hours of Johnson's random firing of the rifle throughout the house. During this time he fired shots through the front door, the only entrance to the house, and through the window facing the street. Bullets traveled as far away as across the road thirty-five feet in front of the house. The road in front of the house was used regularly by people.
 
 
 5
 Johnson admitted intentionally firing the rifle, but claimed he did not believe anyone was nearby. He was charged with second-degree extreme-indifference murder, manslaughter, criminally-negligent homicide, and assault.
 
 B. Jury Instructions and Closing Argument
 1. Extreme-Indifference Murder
 
 6
 Alaska Statute Sec. 11.41.110(a) (former) states extreme-indifference murder occurs where "the person intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to human life." Outside the presence of the jury, the court remarked that the only mental state associated with extreme-indifference murder was an intent by the defendant to perform the fatal act.[2] The court instructed the jury:
 
 
 7
 A person commits the crime of murder in the second degree if he intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life.
 
 
 8
 In order to establish the crime of murder in the second degree, it is necessary for the state to prove the following:
 
 
 9
 ... that William T. Johnson intentionally performed an act, to wit: discharging a firearm through the door of Andrew Johnson's residence;
 
 
 10
 ... that defendant's act caused the death of Joyce Ann Johnson; and
 
 
 11
 ... the act was performed under circumstances manifesting an extreme indifference to the value of human life.
 
 2. Manslaughter
 
 12
 The court also instructed the jury on the lesser-included offenses of manslaughter and criminally negligent homicide. With regard to the manslaughter instruction, the court instructed the jury:
 
 
 13
 A person commits the crime of manslaughter if, without legal justification, he recklessly causes the death of another person under circumstances not amounting to murder in the second degree.
 
 
 14
 The court defined the term "recklessly" for the jury:
 
 
 15
 A person acts "recklessly" with respect to a result ... when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and such a degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who is unaware of a risk of which he would have been aware had he not been intoxicated acts recklessly with respect to that risk.
 
 
 16
 The court instructed the jury to consider the lesser-included offenses of manslaughter and criminally negligent homicide only if they found the state failed to prove extreme-indifference murder beyond a reasonable doubt.
 
 3. Intoxication
 
 17
 The court also instructed the jury the defendant could not use voluntary intoxication as a "complete shelter against the legal consequences" of illegal conduct. The jury was instructed, however, that they could consider such intoxication where "the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime."
 
 4. The Supplemental Instruction
 
 18
 During deliberations, the jury asked for "the typed definition" of extreme indifference, and an example the prosecutor provided during closing arguments to illustrate extreme indifference to the value of human life.
 
 
 19
 Over defense counsel's objection, the trial court gave the jury the following supplemental instruction:
 
 
 20
 [A]n act performed under circumstances manifesting an extreme indifference to the value of human life is an act which creates a very high degree of risk and which exhibits an extreme disregard of social duty. It must be more than a criminal negligent act and more than a reckless act. The examples read to you were from the commentary to the statute and read as follows, "an example of conduct covered by this provision would be shooting through a tent under circumstances that the defendant did not know a person was inside or persuading a person to play Russian Roulette."
 
 5. The Verdict and Postconviction Hearings
 
 21
 The jury convicted Johnson of extreme-indifference second-degree murder, fourth-degree assault, and reckless endangerment. He was sentenced to forty years imprisonment on the murder count, and given one-year concurrent terms on the assault and reckless endangerment counts.
 
 
 22
 The Alaska Court of Appeals reversed the murder conviction. It held the trial court wrongfully told the jury Johnson's subjective awareness of the risk to his victim was irrelevant. The Alaska Supreme Court reversed, finding the trial court made no such statement in the presence of the jury.
 
 
 23
 On remand, the court of appeals again reversed the murder conviction. Citing Neitzel v. State, 655 P.2d 325, 334 (Alaska Ct.App.1982), the court of appeals determined the instructions failed to instruct the jury that to find Johnson acted with extreme indifference, they had to conclude he was reckless regarding the circumstances surrounding his actions. According to the court of appeals, the trial court's instructions did not "accurately and completely inform the jury of the mens rea necessary for conviction of extreme indifference homicide under Alaska law."
 
 
 24
 On petition for review in the Alaska Supreme Court, the state reversed its position in the trial court and conceded subjective awareness of risk is a necessary element of extreme-indifference murder. State v. Johnson, 720 P.2d 37, 39 n. 6 (Alaska 1986). The Alaska Supreme Court concurred in this assessment, concluding that subjective awareness of risk is "necessary to allow a clear distinction between the offenses of reckless (extreme indifference) murder and reckless manslaughter so as to avoid due process problems." Id. See also Edgmon v. State, 702 P.2d 643, 645 (Alaska Ct.App.1985).
 
 
 25
 However, the state argued, and the Alaska Supreme Court agreed, the trial court's instructions as a whole accurately set forth the elements of the offense. The court, citing Neitzel, 655 P.2d at 338, stated the phrase "extreme indifference to the value of human life" adequately conveys the calculus a jury uses to determine recklessness. Johnson, 720 P.2d at 39. The court then held that although the definition of recklessness given in the manslaughter instruction was not repeated in the definition of murder,
 
 
 26
 the definition of manslaughter required that "... the circumstances did not amount to murder in the second degree," and the Supplemental Instruction on extreme indifference murder explicitly required "... more than a reckless act." A fair reading of these instructions in their entirety "adequately conveyed that idea [Johnson's subjective awareness of risk] to the jury." Neitzel, 655 P.2d at 338.
 
 
 27
 Johnson, 720 P.2d at 39.
 
 
 28
 Johnson challenged this in the United States District Court for the District of Alaska in a petition for a writ of habeas corpus. The district court determined that Johnson's intoxication at the time of the offense made his subjective awareness of the risk irrelevant. The court stated, "[a] properly instructed jury would effectively be required to decide not whether the intoxicated Johnson was aware of the risk, but whether a person in Johnson's position, who was not intoxicated, would be aware of the risk." See also Edgmon, 702 P.2d at 645. According to the district court, this "is exactly what [the jury] was instructed to do." The district court also concluded that because the court instructed the jury on recklessness with regard to manslaughter, it was not reasonably likely the jury would consider subjective awareness to be required for the "lesser" crime of manslaughter, but not for the greater offense of murder.
 
 This timely appeal followed.[3]
 STANDARD OF REVIEW
 
 29
 We review de novo a district court's denial of a petition for writ of habeas corpus. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). Although we presume state court findings of fact are correct under 28 U.S.C. Sec. 2254(d), Hamilton v. Vasquez, 882 F.2d 1469, 1470-71 (9th Cir.1989), the presumption of correctness does not attach to a state court's resolution of mixed questions of law and fact. Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir.1993); Hamilton, 882 F.2d at 1471.
 
 
 30
 When reviewing a state jury instruction, we must determine whether the flawed instruction so infected the trial that the conviction violates due process. Suniga v. Bunnell, 998 F.2d 664, 666-67 (9th Cir.1993); Prantil v. California, 843 F.2d 314, 317 (9th Cir.), cert. denied, 488 U.S. 861 (1988). In reviewing an ambiguous instruction, we inquire whether there is a reasonable likelihood the jury misapplied the instruction in a manner violating the constitution. Suniga, 998 F.2d at 666-67. We define the category of infractions violating fundamental fairness very narrowly. Id.
 
 
 31
 "We may affirm a correct decision of a district court in a criminal proceeding even though the decision is based upon an inappropriate ground." United States v. Lewis, 991 F.2d 524, 526 n. 2 (9th Cir.), cert. denied, 114 S.Ct. 216 (1993).
 
 DISCUSSION
 1. Due Process in the Instructions
 
 32
 Unless harmless, jury instructions that presume or omit an element of the offense violate due process by relieving the state from proving every element of the crime beyond a reasonable doubt and precluding the jury from finding each fact necessary to convict a defendant. Carella v. California, 491 U.S. 263, 266 (1989) (per curiam); Martinez v. Borg, 937 F.2d 422, 423-24 (9th Cir.1991). See also In re Winship, 397 U.S. 358, 364 (1970). Furthermore, a defendant's constitutional rights are violated if a reasonable juror could have misinterpreted or misapplied the instruction. Sandstrom v. Montana, 442 U.S. 510, 514 (1979).
 
 
 33
 Subject to the constraints of due process, however, states have the sole authority to define the elements of their criminal offenses. See Martin v. Ohio, 480 U.S. 228, 232 (1987); Patterson v. New York, 432 U.S. 197, 201-02 (1977). Although federal courts are bound by state court interpretations of state law, Wainwright v. Goode, 464 U.S. 78, 84 (1983); LaMere v. Risley, 827 F.2d 622, 623 (9th Cir.1987), such state court interpretations are not the "final authority on the interpretation which a jury could have given the instruction." Sandstrom, 442 U.S. at 516-17.
 
 
 34
 At the time of Johnson's offense, a conviction for extreme-indifference murder required (1) a knowing act, and (2) recklessness to the degree of extreme indifference to human life. Neitzel, 655 P.2d at 326. Johnson argues the trial court failed to instruct the jury adequately on the subjective awareness of the risk attendant to recklessness to the degree required for second-degree extreme-indifference murder.
 
 
 35
 Although the trial court did not explicitly inform the jury that subjective awareness of risk is an element of the offense, Alaska accepts the statement in the commentary to the Model Penal Code that the calculus used to differentiate between negligence, recklessness, and malice is conveyed in the phrase "extreme indifference to the value of human life." Johnson, 720 P.2d at 39. See also Neitzel, 655 P.2d at 336-38 (quoting A.L.I., Model Penal Code and Commentaries, Part II Sec. 210.2, at 25-26 (1980) ("Given the Model Code definition of recklessness, the point involved is put adequately and succinctly by asking whether the recklessness rises to the level of 'extreme indifference to the value of human life.' ") This calculus contains four factors:
 
 
 36
 1. The social utility of the actor's conduct;
 
 
 37
 2. the magnitude of the risk his conduct creates including both the nature of foreseeable harm and the likelihood that the conduct will result in harm;
 
 3. the actor's knowledge of the risk; and
 
 38
 4. any precautions taken to minimize the risk.
 
 
 39
 Johnson, 720 P.2d at 39 (quoting Neitzel, 655 P.2d at 336-37).
 
 
 40
 By Alaska's definition of the offense, the court's initial instruction to the jury that to find Johnson guilty it must conclude the act "was performed under circumstances manifesting an extreme indifference to the value of human life" encompassed an instruction on subjective knowledge of the risk. See also State v. Dominguez, 128 N.H. 288, 289-90, 512 A.2d 1112, 1113 (1986) (Souter, J.) ("[e]xtreme indifference to the value of human life" is a phrase "easily understood," and the court has no obligation to explain its meaning). As a federal habeas court, we are bound by Alaska's interpretation of the elements of the crime. Estelle v. McGuire, 112 S.Ct. 475, 480 (1991).
 
 
 41
 Furthermore, the Supplemental Instruction made explicit that "simple" recklessness was insufficient, and the jury had to find Johnson's act created a very high degree of risk and "exhibit[ed] an extreme disregard of social duty." See Norris v. State, 857 P.2d 349, 355 (Alaska Ct.App.1993) (an instruction of extreme indifference to the value of human life in conjunction with a manslaughter instruction implicitly informs the jury that second-degree murder requires "proof of culpability greater than recklessness").[4]
 
 CONCLUSION
 
 42
 Because the trial court did not omit an essential element of its instruction on second-degree extreme-indifference murder, and a reasonable juror would not misapply the court's charge, we AFFIRM.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit Rule 36-3
 
 
 [1]
 Johnson's blood alcohol level was estimated to be .17 or .18 percent at the time of the shooting
 
 
 [2]
 Additionally, during closing argument, the prosecutor argued to the jury that subjective awareness of risk was not required for extreme-indifference murder. When defense counsel attempted to assert that extreme-indifference murder required a knowledge of risk, the prosecutor objected. The prosecutor argued, "[c]ounsel's saying that we have to prove that defendant knew the circumstances manifests [sic] an extreme indifference to human life and that's not the law as the court's going to instruct." Although the prosecutor's arguments were contrary to the law, the court instructed the jury that arguments and statements by counsel were not evidence, and should not be considered by the jury in making their final determination. But see Norris v. State, 857 P.2d 349, 355 (Alaska Ct.App.1993) (attorney's statement to the jury can clarify meaning of extreme indifference to the jury)
 
 
 [3]
 The notice of appeal, filed after the petition was denied, but before the judgment, was timely. Fed.R.App.P. 4(a)(2)
 
 
 [4]
 This charge also differentiated between manslaughter and murder. See Neitzel, 655 P.2d at 338 (the act must be "so dangerous and so lacking in social utility ... that it demonstrates extreme indifference to human life and serves to distinguish murder from manslaughter"). See also id. at 335-36 (quoting the Model Penal Code's commentary's statement that extreme-indifference murder must be a higher degree of recklessness than for manslaughter)