Alex Huerta **SUNIGA**, Petitioner–Appellant,

v.

R.J. **BUNNELL**, Defendant–Appellee.

No. 92–15204.

United States Court of Appeals, Ninth Circuit.

Submitted May 12, 1993 *.

Decided July 2, 1993.

Amended Aug. 5, 1993.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Ann Hardgrove Voris, Asst. Federal Public Defender, Fresno, CA, for petitioner-appellant.

Robert D. Marshall, Deputy Atty. Gen., Sacramento, CA, for defendant-appellee.

Before: POOLE, FERGUSON, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Alex Huerta Suniga appeals the district court's denial of his petition for habeas corpus relief. He argues that his conviction violated due process standards because of instructional errors by the state trial court. We agree in part and reverse the district court's denial of his petition.

## BACKGROUND

Suniga killed Carlos Guantes after a day of partying and, it seems, brooding. On the day of the killing, Suniga, his wife Eleanor Suniga and Guantes attended a party at the beach. Alcohol was consumed there. At about 4:00 in the afternoon they all returned to the apartment complex in which they lived. Suniga and his neighbor, Jesse Caldera, soon left together on Suniga's motorcycle in order to pick up Caldera's motorcycle. On the way Suniga told Caldera that he suspected that someone—it turned out he meant Guantes—was "messing with" their wives. They picked up Caldera's bike, stopped at a bar, drank some more beer, and then left for the apartment complex.

Suniga arrived at the apartment alone. His wife and several others, including Guantes, were drinking in the apartment of Caldera's wife, Letitia Zuniga. Zuniga saw Suniga arrive and warned Eleanor that he looked angry. Eleanor told her daughter to call the police. She then accompanied her husband to their own apartment. On the way there, they began arguing. Suniga got his shotgun from the apartment and then, in view of the neighbors, struck his wife in the back of her head with the butt of the gun. After that, he fired a shot at her or in her general direction and called out, "Have your great boyfriend come out here if he's man enough."

Guantes (unarmed, but carrying a beer can) ran out toward Suniga, who was loading the shotgun. The two struggled over the

gun and Guantes was shot in the chest at close range. Suniga then pointed the gun at his fallen opponent and said to Eleanor, "Do you want me to shoot him in the head?" The shot would have been unnecessary; Guantes died almost immediately from loss of blood.

The police came and arrested Suniga. While he was being booked, he was asked for his correct address. He responded, "I live where I killed that . . . punk. I shot him. I hope he dies. He deserves to die for messing around with my wife."

Suniga was ultimately charged with murder on the theory that he killed Guantes with malice aforethought. At trial, he claimed that the killing was not intentional because the gun accidentally discharged while he was struggling with Guantes. There was evidence that Suniga was under the influence of alcohol. There was also some evidence that Suniga told Guantes to stay away.

While the theory of the prosecution was that this killing was committed with malice aforethought, the jury was instructed on that theory as well as on felony-murder. It is the felony-murder aspect of the instruction that presents the issue with which we must grapple. The court instructed the jury as follows:

> The defendant is charged in Count I of the Information with the commission of the crime of murder, a violation of Section 187 of the Penal Code. The crime of murder is the unlawful killing of a human being with malice aforethought or the unlawful killing of a human being which occurs during a commission or attempt to commit a felony inherently dangerous to human life. In order to prove the commission of the crime of murder, each of the following elements must be proved: Number one, that a human being was killed; two, that the killing was unlawful; and three, that the killing was done with malice aforethought or occurred during the commission of or attempt to commit a felony inherently dangerous to human life.

> An assault with deadly weapon is a felony inherently dangerous to human life.

The court then instructed on the definition of malice, including implied malice.[1] It gave a further definition of second degree murder and of manslaughter and then went on to instruct:

> If a person while committing a felony inherently dangerous to human life causes another's death, the crime is murder. If while committing a misdemeanor inherently dangerous to human life he causes another's death, he's guilty of manslaughter. There are many acts which are lawful, [but] nevertheless, endanger human life.

Suniga contends that these instructions resulted in a trial so unfair that his conviction violated the Constitution. That the trial court erred is indisputable. What we must decide is the effect of that error.

## STANDARD OF REVIEW

■■■ The question of the ultimate standard of review to be applied in this habeas corpus case is one of some concern. Of course, it is a given that we review the grant or denial of a habeas corpus petition by the district court *de novo*. *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991). That, however, does not conclude our inquiry into the standard under which we consider the instructional error claim in this case. The error was made in a state court trial, and we cannot grant habeas corpus based upon mere state law errors. *See Estelle v. McGuire,* — U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). When it comes to instructional errors, the Supreme Court has made it clear that:

> The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). It is well estab-

---

1. The form of implied malice instruction has been criticized in California. *See People v. Dellinger,* 49 Cal.3d 1212, 1221, 264 Cal.Rptr. 841, 846, 783 P.2d 200, 205 (1989); *People v. James,* 196 Cal.App.3d 272, 290–91, 241 Cal.Rptr. 691, 700–01 (1987). However, any error was merely one of state law and is not cognizable here. *See* "Standard of Review" discussion, *infra.* At any rate, given our resolution of the felony-murder issue, we need not consider this issue.

lished that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ... we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."

*Id.* at ——, 112 S.Ct. at 482 (citations and footnote omitted); *see also Prantil v. California,* 843 F.2d 314, 317 (9th Cir.), *cert. denied,* 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988).

If the instructional error does meet the violation of due process standard, we must still ask whether a further error analysis is required. In a habeas corpus case involving trial error which violates a constitutional norm, we must ordinarily go on and decide whether that error was harmless. That is, we must ask whether it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahmson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (citation omitted). If it did not, habeas corpus relief is not available.

However, that standard seems a bit redundant in the case of an instructional error which has already been found to be of a kind that has infected the proceeding to the point that due process has been denied. Furthermore, at least some instructional errors are so serious that they amount to structural defects, " 'which defy analysis by "harmless-error" standards.' " *Id.* at ——, 113 S.Ct. at 1717 (citation omitted). An example of that kind of error occurs when a jury is instructed in a way that allows proof of an element of a crime on a standard less demanding than beyond a reasonable doubt. *Sandstrom v. Montana,* 442 U.S. 510, 524–27, 99 S.Ct. 2450, 2459–60, 61 L.Ed.2d 39 (1979). Another example of a structural error occurs when the court allows the defense to be ambushed with an instruction that changes the theory of the case at the last minute. *Sheppard v. Rees,* 909 F.2d 1234, 1237–38 (9th Cir.1989).

At least for errors of that type the harmless-error standard of *Brecht* certainly does not apply. Rather, automatic reversal is required. *Id.*

■ We recognize that in this case the California Court of Appeal found that the instructional error was harmless beyond a reasonable doubt. However, that determination does not bind us. Rather, harmlessness is a mixed question of fact and law which we review *de novo. See Marino v. Vasquez,* 812 F.2d 499, 504 (9th Cir.1987). Again, if harmless error analysis is applied, our review will require Suniga to meet the more stringent habeas corpus standard.

■ Finally, the record indicates that Suniga did not object to the challenged instruction at the trial court. It is even possible that he participated in requesting the instruction, at least in a general way. He first challenged the instruction on appeal. Nevertheless, the California Court of Appeal considered the challenge, as did the district court. The state has never asserted that a procedural default occurred. Thus, we will consider the challenge on its merits. *See Panther v. Hames,* 991 F.2d 576, 582 (9th Cir.1993) (per curiam).

## DISCUSSION

■ The prosecution never did rely upon a felony-murder theory in this case. It did not argue that theory to the jury; it relied upon malice to support a conviction. Thus, when the trial court instructed on felony-murder it interjected an issue that had not previously been part of the case. That is not all. The particular felony-murder theory on which the court instructed does not even exist. In California, there cannot be a second degree murder based upon the theory that a death occurred during the perpetration of an assault with a deadly weapon (ADW) upon the victim. While that is a state—not a constitutional—rule, it is based upon considerations of policy and justice. As the California Supreme Court said in *People v. Ireland,* 70 Cal.2d 522, 539, 75 Cal.Rptr. 188, 198, 450 P.2d 580, 590 (1969):

We have concluded that the utilization of the felony-murder rule in circumstances

such as those before us [,ADW,] extends the operation of that rule "beyond any rational function that it is designed to serve." To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a feloneous assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged. [citations omitted]

That view is widely held. *See* Robert L. Simpson, Annotation, *Application of Felony-Murder Doctrine Where the Felony Relied Upon Is an Includible Offense With the Homicide*, 40 A.L.R. 1341 § 4 (1971) and (1992 Supp.).

Given this, we cannot brush aside Suniga's claim on the theory that what occurred was simply an error of state law. It *was* an error of state law, but it was not simply that. It was also an error that allowed the jury to convict Suniga on a theory of culpability that did not exist. It is that aspect which raises the specter of fundamental unfairness and which requires us. to look harder.

■ Suniga asserts that the effect of the instruction was to allow the jury to convict him of an element of murder on a lesser standard than beyond a reasonable doubt. *See Sandstrom*, 442 U.S. at 521–24, 99 S.Ct. at 2458–59; *see also Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985). We do not agree. In California, a felony-murder theory is not truly a presumption of some element of malice-murder. It is a separate theory of culpability of the ultimate crime. *See People v. Dillon*, 34 Cal.3d 441, 472–76, 194 Cal.Rptr. 390, 408–11, 668 P.2d 697, 715–18 (1983). Felony-murder is " 'not merely an evidentiary shortcut to finding malice,' " it is " 'a rule of substantive law.' " *Id.* at 475, 194 Cal.Rptr. at 411, 668 P.2d at 718 (citation omitted). In this case, therefore, no *Sandstrom* error was committed. There is no real question that the jury was fully instructed on the theory of malice-murder. It was not told to presume the existence of any element of that form of murder. It was, as it happened, instructed on the separate theory of felony-murder.

■ Well then, Suniga says, the vice here is that the jury was instructed on two entirely separate crimes and was not required to reach unanimity on either of them. Again, we must disagree. California declares that both of these routes—malice-murder and felony-murder—lead to but one crime, murder. *See People v. Gallego*, 52 Cal.3d 115, 188–89, 276 Cal.Rptr. 679, 717, 802 P.2d 169, 207 (1990), *cert. denied,* — U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991); *see also Morrison v. Estelle*, 981 F.2d 425, 427–28 (9th Cir.1992) (instructions on murder and felony-murder; issue was notice), *cert. denied,* — U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993); *Sheppard,* 909 F.2d at 1236 (same). The issue of whether a state may constitutionally submit both theories to a jury without requiring unanimity on either of them has been resolved in the affirmative. *See Schad v. Arizona,* — U.S. ——, —— - ——, 111 S.Ct. 2491, 2496–2504, 115 L.Ed.2d 555 (1991). There are no relevant differences between California and Arizona law that could require the application of a different rule to this case. Both states penalize a single crime of murder and both allow a conviction of that crime to be reached by different routes.

This issue does shade off into a question of whether the vice here is one of inadequate notice. We addressed that problem in *Sheppard*, where the state admitted that the defendant had been misled and ambushed when a felony-murder theory was injected by the prosecution at the last minute. 909 F.2d at 1236. We said that was an error of constitutional proportion and required automatic reversal. *Id.* at 1237–38. But that is not exactly this case. Here the prosecution did not perpetrate an ambush. Rather, it appears that both sides generally called for the giving of a pattern jury instruction—one which happened to have alternatives and blanks to fill in. The trial judge then read

the instruction in its entirety, without objection, but the prosecution never argued the felony-murder theory to the jury. While the effect may have been the same as, or worse than, an ambush, the vice here is somewhat different from the one we faced in *Sheppard.* Yet, while neither this nor any of the other theories we have mentioned points unerringly to the vice in this case, each is, in some ways, an emanation from the basic concept that we are asked to address, and each helps illuminate that concept.

In *Francis,* for example, the Supreme Court expressed its concern that the state not be relieved of its "burden of persuasion beyond a reasonable doubt of every essential element of a crime." 471 U.S. at 313, 105 S.Ct. at 1970. As the Court went on to say, that "protects the 'fundamental value determination of our society,' . . . that 'it is far worse to convict an innocent man than to let a guilty man go free.'" *Id.* (citation omitted). Is it not a much more serious wrong if a person is convicted on a theory that does not even exist within the jurisdiction? Is it not that very possibility which presents the problem with this case? We think the answer to both questions is yes.

A note of caution sounded by the Court in *Schad* must also guide us as we review these issues:

> Thus it is an assumption of our system of criminal justice " 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" that no person may be punished criminally save upon proof of some specific illegal conduct. Just as the requisite specificity of the charge may not be compromised by the joining of separate offenses, nothing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of "Crime" so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction.

— U.S. at —— ——, 111 S.Ct. at 2497–98 (citations omitted). Here, too, the Court harkens back to the central principle that a conviction must be based upon some specific theory of criminal conduct. While one can-

not deny that there was evidence from which one could find criminal conduct—even egregious criminal conduct—in this case, it is rather jarring to say that Suniga could be found guilty of murder on a non-existent legal theory.

The same theme was sounded in *Sheppard,* where we said that "[a] trial cannot be fair unless the nature of the charges against a defendant are adequately made known to him or her in a timely fashion." 909 F.2d at 1237. Here, a theory upon which Suniga could have been convicted was unveiled at the last moment. While it was a chimera, the danger it presented was not chimerical.

Again, these cases help to uncover the fundamental error in the instructions given in this case, an error which of its nature "infected the entire trial." *McGuire,* —— U.S. at ——, 112 S.Ct. at 482. For here the jury could have convicted Suniga on the illegal and nonexistent theory that because he was engaged in an ADW he was guilty of second degree murder, and it could have done so without deciding whether his alcohol consumption or claim of accident somehow affected the malice equation. *See Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957) (on direct appeal, when a verdict is supportable on one legal ground and not on another and the court cannot tell which ground the jury relied upon, the verdict is set aside) (overruled on other grounds, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). We cannot tell what theory the jury used. In fact, because the jury did not need to be unanimous about the theory it used, Suniga was improperly convicted if even one juror decided that the felony-murder theory would be sufficient. *Cf. Schad,* —— U.S. at —— ——, 111 S.Ct. at 2503–04. Of course, we cannot assume that the jury simply ignored the felony-murder instruction. It was told that it was "to apply the rules of law" that the judge stated, and felony-murder was one of them. Nor could it simply ignore one rule and choose another, for it was also told "not to single out any . . . individual point or instruction and ignore the others." As the Supreme Court said in *United States v. Olano,* —— U.S. ——, —— —— ——, 113 S.Ct.

1770, 1781, 123 L.Ed.2d 508 (1993) (citations omitted), " '[It is] the almost invariable assumption of the law that jurors follow their instructions'. . . . '[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the court's instructions in a criminal case . . . and follow the instructions given them.' " A juror would, therefore, have been perfectly justified in deciding that there was no need to worry about malice at all because felony-murder would do as well.

This is no phantom, as a fanciful example will illustrate. Suppose in the middle of this awful event Suniga stepped on and killed an ant and the judge instructed the jury that Suniga could be found guilty of the felony-murder of Guantes with the felony being the squashing of an ant. True, that is ludicrous. But felony-murder ADW is no more a crime than felony-murder death of an ant. Indeed, ADW is a more dangerous formulation because the jury would most likely perceive the absurdity of felony-murder ant-squashing while the flaw in felony-murder ADW is not at all obvious, even though the California Supreme Court has dubbed it irrational and unsupported by logic or law. *See Ireland*, 70 Cal.2d at 539, 75 Cal.Rptr. at 198, 450 P.2d at 590. In short, when the various strands of theory we have described are woven together, the tapestry which emerges depicts an indisputable truth: *Our sense of justice resiles from convicting a person without proving every element of an existing criminal offense of which he has notice.* The unusual instructional error in this case permitted the jury to unwittingly abnegate that truth.

■  But, the state argues, the evidence of malice was strong. We agree; it was very strong. There can be little doubt that Suniga was equipped with a gun, called out to the victim, and showed nothing but a hateful disposition after his victim was felled. Of course, there is also no doubt that the victim did charge at Suniga and that the men grappled over the gun. Suniga's drinking is also unquestioned. But all of this is beside the point, for this is not a harmless-error case. As we said in *Sheppard:*

> Neither can we, as the state suggests, base a harmless-error determination on

the seemingly overwhelming weight of the evidence pointing to the petitioner's guilt of . . . murder. Where two theories of culpability are submitted to the jury, one correct and the other incorrect, it is impossible to tell which theory of culpability the jury followed in reaching a general verdict.

909 F.2d at 1237–38. Here, too, it is impossible to know what the jury (or some juror) did. Here, too, the writ should issue.

## CONCLUSION

The state trial court erroneously instructed the jury on the theory of felony-murder. We have determined that its error was so serious that the " 'instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *McGuire,* —— U.S. at ——, 112 S.Ct. at 482 (citation omitted). In so doing, we emphasize that this is not a case where the trial court misinstructed on some existing theory of state law. Nor is it a case of an undesirable or ambiguous instruction. Here it is acknowledged that there is no such state law theory at all, so Suniga was exposed to the possibility of conviction of felony-murder ADW when no such theory of criminality exists in California. If even one juror voted to convict him on that theory, he was convicted wrongfully and in violation of powerful historical and philosophical principles which underlie our system. That cannot be risked.

We reverse the district court's denial of habeas corpus and remand to that court. It shall issue the writ and determine a reasonable time in which the State of California shall re-try Suniga.

**REVERSED and REMANDED.**