**Thomas Charles KLEVE,**
**Petitioner–Appellant,**

v.

**D.R. HILL, Warden CCI; J. Gomez; Attorney General of the State of California; Daniel E. Lungren, Attorney General, Respondents–Appellees.**

No. 97–56182.

United States Court of Appeals, Ninth Circuit.

Submitted April 16, 1999.[1]

Decided July 30, 1999.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a).

Thomas Charles Kleve, pro per, Tehachapi, California, for petitioner-appellant.

Douglas L. Wilson, Assistant Attorney General, Los Angeles, California, for respondents-appellees.

Before: D.W. NELSON, FERNANDEZ, FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Petitioner Thomas Charles Kleve appeals pro se from the district court's denial of his habeas petition under 28 U.S.C. § 2254. The central issue on appeal is whether petitioner was convicted of a non-existent crime when he was convicted in 1989 of conspiracy to commit second degree murder in violation of California Penal Code § 182. We have jurisdiction under 28 U.S.C. § 2253. We hold that petitioner's conviction was valid, and we affirm.

## I.

## BACKGROUND

On September 29, 1987, a Los Angeles County Sheriff's Department Deputy stopped petitioner's truck because it had an expired registration tag. As petitioner got out of the driver's side of the truck, the deputy saw that his passenger, Clinton Calley, had a street map open in his lap and a shotgun partially hidden in his jacket. A search of the truck revealed a case containing a dagger, a semi-automatic 9–millimeter pistol and two magazines containing live rounds that fit the pistol. A pat-down search of petitioner revealed additional 9–millimeter live rounds. A pat-down search of Calley revealed an explosive device in his jacket pocket. During a post-arrest booking search, officers found a note in Calley's wallet with the name Mark Hallin, a physical description of Hallin, two non-existent addresses on Ramhurst Street (where Hallin lived, but at a different address), a description of Hallin's car and motorcycle, and the date September 29, 1987. The Sheriff's Department determined that the explosive device found in Calley's pocket could have been attached to the starter of Hallin's motorcycle and detonated when the motorcycle was started.

The Los Angeles District Attorney charged petitioner with conspiracy to commit first degree murder; transporting a destructive device; possession of a silencer; carrying a loaded firearm; and permitting a loaded firearm in a vehicle. At petitioner's first trial, a jury found him not guilty of possession of a silencer, but guilty of two misdemeanor counts of carrying a loaded firearm and two misdemeanor counts of permitting a loaded firearm in a vehicle. The jury was unable to reach a verdict on the remaining charges. Following retrial, a second jury found petitioner not guilty of conspiracy to commit first degree murder, but guilty of conspiracy to commit second degree murder in violation of California Penal Code § 182.[2]

Petitioner unsuccessfully challenged his conviction on direct appeal and in several state habeas petitions. Following dismissal of prior federal habeas petitions for failure to exhaust, petitioner filed this petition in 1996. The district court denied the

---

**2.** Clinton Calley was convicted by the same jury of conspiracy to commit first degree murder, possession of a destructive device, and transportation of a destructive device.

petition. This appeal followed. We review de novo the district court's denial. *See Eslaminia v. White,* 136 F.3d 1234, 1236 (9th Cir.1998).

## II.

## DISCUSSION

A. *Petitioner's Claim that He Was Convicted of a Non-existent Crime*

■ At the time of petitioner's conviction in 1989, California Penal Code § 182 provided that when two people conspire to commit a felony

> they shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony. *If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.*

Cal.Penal Code § 182 (italics indicate language added in 1955). The California Supreme Court held last year, in *People v. Cortez,* 18 Cal.4th 1223, 77 Cal.Rptr.2d 733, 960 P.2d 537 (1998), that there is no crime of conspiracy to commit second degree murder under California law: "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder, and ... all murder conspiracies are punishable in the same manner as murder in the first degree pursuant to the punishment provisions of Penal Code section 182." *Id.* at 1237–38, 77 Cal.Rptr.2d 733, 960 P.2d 537. Relying on *Cortez,* petitioner contends that conspiracy to commit second degree murder was not a crime under California law at the time of his conviction.

■ There are two possible responses to petitioner's contention. First, we could conclude that California law has evolved since the time of petitioner's conviction. Under this conclusion, the California Supreme Court's decision in *Cortez* states the law now, but it does not accurately describe the law when petitioner was convicted. In that event, petitioner's case is relatively straightforward. California is free to change its criminal law prospectively without undermining the validity of convictions obtained under the old law. *See Pulley v. Harris,* 465 U.S. 37, 42, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (holding a claim based on evolution of state law is a matter of state law properly addressed to the state courts); *Wainwright v. Stone,* 414 U.S. 21, 23–24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973) (holding Florida not constitutionally compelled to make a new construction of criminal statute retroactive); *La Rue v. McCarthy,* 833 F.2d 140, 142–43 (9th Cir.1987) (finding no due process violation where the California Supreme Court changed the felony-murder rule after petitioner's conviction became final); *see also Fiore v. White,* 149 F.3d 221, 224–26, n. 4 (3d Cir.1998) (holding state courts not required to apply new statutory interpretation retroactively even where new interpretation was announced in a co-defendant's case), *cert. granted,* —— U.S. ——, 119 S.Ct. 1332, 143 L.Ed.2d 497 (1999). Thus, if *Cortez* is an evolution of California law, petitioner cannot successfully attack his conviction based on an argument that conspiracy to commit second degree murder was not a crime when he was convicted.

Second, we could conclude that California law has not evolved and that the law stated by the California Supreme Court in *Cortez* in 1998 was also the law in 1989. Although the matter is not free from doubt, there is some basis for that conclusion. We know that conspiracy to commit second degree murder was not a crime in California in 1940. *See People v. Kynette,* 15 Cal.2d 731, 744, 104 P.2d 794 (1940), *overruled on other grounds, People v. Snyder,* 50 Cal.2d 190, 197, 324 P.2d 1 (1958).

In 1940, the relevant punishment language of § 182 provided:

When [two or more persons] conspire to commit any felony ... they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony[.]

Cal.Penal Code § 182, as amended by Stats.1919, ch. 125, § 1, p. 170. Interpreting that language, the California Supreme Court in *Kynette* held that

a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree for the obvious reason that the agreement to murder necessarily involves the 'willful, deliberate, and premeditated' intention to kill a human being.

15 Cal.2d at 745, 104 P.2d 794.

In 1955, the California legislature added two sentences to the punishment language of § 182. Those sentences, which remain in the statute today, provide:

If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.

Cal.Penal Code § 182, as amended by Stats.1955, ch. 660, § 1, p. 1155. Nearly twenty years later, the California Supreme Court in dictum interpreted the added language as establishing the crime of conspiracy to commit second degree murder. *See People v. Horn,* 12 Cal.3d 290, 115 Cal. Rptr. 516, 524 P.2d 1300 (1974). In a footnote, the *Horn* Court stated:

*Kynette*'s assertion that a conspiracy to commit murder is always a conspiracy to commit first degree murder is inconsistent with the present language of Penal Code section 182.... As [the] language [of § 182] is written and punctuated, it

plainly authorizes the trier of fact to return a verdict finding conspiracy to commit murder in the second degree. Only if the trier of fact fails to determine the degree is a conspiracy to commit murder punished as one to commit first degree murder. Since the Legislature has authorized a verdict of conspiracy to commit second degree murder, it clearly does not believe that crime to be a logical impossibility.

12 Cal.3d at 298, n.5, 115 Cal.Rptr. 516, 524 P.2d 1300.

The California Supreme Court did not interpret the two new sentences of § 182 again until its recent decisions in *People v. Swain,* 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994 (1996), and, two years later, in *Cortez.* In *Swain,* the Court hinted that there was no crime of conspiracy to commit second degree murder, but the *Horn* dictum was not explicitly repudiated until *Cortez.* The Court in *Cortez* concluded that the two sentences added to § 182 in 1955

[were] not intended to authorize the substantive offense of conspiracy to commit second degree express malice murder, and [were] intended instead to codify [the] holding in *Kynette* by acknowledging that all murder conspiracies are the functional equivalent of conspiracy to commit premeditated first degree murder[.]

18 Cal.4th at 1236 n.5, 77 Cal.Rptr.2d 733, 960 P.2d 537. The Court in *Cortez* did not specify whether its interpretation of § 182 is to be applied retroactively. For purposes of the analysis that follows, we assume that *Cortez* is retroactive and that conspiracy to commit second degree murder was not a crime at the time of petitioner's conviction.

 All murder under California law requires "malice aforethought," which includes an "intent to kill." First degree murder requires premeditation and deliberation, while second degree murder is characterized by the absence of premeditation and deliberation. Under *Cortez,* any

conspiracy to commit murder is treated as if it were a conspiracy to commit first degree murder. According to *Cortez*, conspiracy is a "specific intent" crime requiring both "an intent to agree or conspire and a further intent to commit the target crime or object of the conspiracy." *Id.* at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537. Even though the "target crime" in *Cortez* was murder, the jury in that case was never instructed that it needed to find premeditation and deliberation in order to convict. The Court in *Cortez* held that so long as the jury found specific intent to conspire to commit murder, the mental state necessary for conspiracy was sufficient to justify treating *any* conspiracy to commit murder as the equivalent of conspiracy to commit first degree murder. The Court explained:

> [I]t logically follows that where two or more persons conspire to commit murder-i.e., intend to agree to conspire, further intend to commit the target offense of murder, and perform one or more overt acts in furtherance of the planned murder-each has acted with a state of mind "functionally indistinguishable from the mental state of premeditating the target offense of murder." The mental state required for conviction of conspiracy to commit murder necessarily establishes premeditation and deliberation of the target offense of murder-hence all murder conspiracies are conspiracies to commit first degree murder, so to speak. More accurately stated, conspiracy to commit murder is a unitary offense punishable in every instance in the same manner as is first degree murder under the provision of Penal Code section 182.

*Id.* at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537 (citations omitted).

We believe that the most plausible interpretation of *Cortez*, as applied to petitioner's case, is that petitioner was validly convicted of conspiracy to commit murder under California law but was punished more leniently than *Cortez* contemplates. In convicting petitioner of conspiracy to commit second degree murder, the jury

found that petitioner (1) intended to agree to commit murder, and (2) had the required mental state-malice aforethought-to commit the target crime of murder. Under *Cortez*, this is all that is required for a conviction for conspiracy to commit murder under California law. Thus, because the jury found that petitioner had conspired to commit murder, his conspiracy was the equivalent under *Cortez* of conspiracy to commit first degree murder and was punishable as if he had committed first degree murder. In fact, however, petitioner was punished not as if he had committed first degree murder, but rather as if he had committed second degree murder. Thus, under *Cortez*, there was an error in petitioner's sentencing, but the error worked for rather than against petitioner.

Petitioner could argue that his acquittal on the charge of conspiracy to commit first degree murder is inconsistent with a conviction for what, under *Cortez*, is the only crime for which he could have been convicted-the unitary crime of conspiracy to commit murder. It is true that petitioner's acquittal necessarily means that the jury found he did not premeditate and deliberate with respect to the target crime of murder. This does not mean, however, that petitioner could not be convicted of what, under *Cortez*, is treated as conspiracy to commit first degree murder. This is so for either of two reasons.

First, we may understand the acquittal on the more serious charge and the conviction on the less serious charge simply as inconsistent verdicts. *United States v. Powell*, 469 U.S. 57, 64–68, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), holds that an inconsistent verdict is not invalid; it is simply inconsistent. Second, and alternatively, we may understand the two verdicts as consistent. Though the opinion is not free from ambiguity, *Cortez* can be read to hold not that all conspiracy to commit murder is, in fact, conspiracy to commit first degree murder, but rather that it may be treated for purposes of punishment as the

*equivalent* of conspiracy to commit first degree murder. Under this reading of *Cortez,* the jury's acquittal on the charge of conspiracy to commit first degree murder-i.e., its finding that petitioner did not conspire to murder with premeditation and deliberation of that murder-is neither here nor there. That is, under this reading, petitioner's crime was not actual conspiracy to commit first degree murder, but rather its functional equivalent. In the words of the California Supreme Court, it was conspiracy to commit first degree murder, "so to speak." *Cortez,* 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537.

We therefore conclude that, even if *Cortez* states the law of California as it has been since the *Kynette* decision in 1940, petitioner was convicted of a crime under California law. The court in 1989 called petitioner's crime conspiracy to commit second degree murder, even though *Cortez* tells us today that his crime was conspiracy to commit first degree murder or its equivalent. The court in 1989 also punished petitioner's crime as if it had been a conviction for second degree murder, even though *Cortez* tells us today that it should have been punished as a conviction for first degree murder. But we do not believe that mislabeling petitioner's crime and punishing him with undeserved leniency provide a basis for invalidating his conviction altogether.

### B. *Petitioner's Other Claims*

Petitioner has raised a number of additional claims, none of which depend on his argument under *Cortez* that he was convicted of a non-existent crime. In a separate unpublished memorandum, we affirm the district court's decision denying these claims.

For the foregoing reasons, the district court's denial of the petition is AFFIRMED.

### D.W. NELSON, Circuit Judge, Dissenting:

I respectfully dissent because the majority's opinion essentially finds Kleve guilty of a crime for which the jury acquitted him. Given the jury's acquittal on the conspiracy to commit first degree murder charge and the California Supreme Court's determination that conspiracy to commit second degree murder was not a crime at the time of Kleve's conviction, we have no choice but to reverse Kleve's conviction for second degree murder.

I agree with the majority that "there is no crime of conspiracy to commit second degree murder under California law." In California, only the legislature is authorized to make conduct criminal. *See People v. Mutch,* 4 Cal.3d 389, 394, 93 Cal. Rptr. 721, 482 P.2d 633 (1971); *People v. Smith,* 57 Cal.App.4th 1470, 1480-81, 67 Cal.Rptr.2d 604 (1997); *see also Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (stating that the same principle applies in the federal system). Whether conspiracy to commit second degree murder is a crime therefore must be determined by the terms of California Penal Code § 182. The mistaken dictum by the *Horn* court, which stated that conspiracy to commit second degree murder is a crime, did not change the nature of the law because the California legislature never intended to authorize such a crime when it enacted and amended § 182. *See People v. Cortez,* 18 Cal.4th 1223, 1232 n. 3, 1236, 77 Cal. Rptr.2d 733, 960 P.2d 537 (1998). Because *Cortez* establishes that the legislature did not provide for a crime of conspiracy to commit second degree murder at the time of Kleve's conviction, we are not presented with the question of whether a state must retroactively apply changes in its criminal law.

As I see it, this should be the end of the analysis. Just as we held that a conviction that could have been based on a "theory of culpability that did not exist" violated due process in *Suniga v. Bunnell,* 998 F.2d 664, 668 (9th Cir.1993), a conviction for something that is not in fact a crime cannot be squared with the dictates of due process. Such a situation "raises the spec-

ter of fundamental unfairness." *Id.; see also Bousley*, 118 S.Ct. at 1610 (noting that habeas review can be used to correct situations in which a defendant was convicted under an erroneous interpretation of a statute and, consequently, "convicted of an act that the law does not make criminal") (internal quotation marks and citation omitted).[1]

The majority, however, after acknowledging that conspiracy to commit second degree murder—the only crime for which Kleve was convicted—is not a crime under California law, embarks on some form of harmless error-like review that allows it to recast Kleve's conviction as a conviction for conspiracy to commit first degree murder. The inescapable problem with this inquiry is that the jury *acquitted* Kleve of conspiracy to commit first degree murder. It is well established that the Constitution reserves the determination of guilt to the jury. *See Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In interpreting the jury's second degree conviction as the "functional equivalent" of a first degree conviction, the majority erroneously supplants the jury's clear decision to acquit Kleve of the first degree charge.

First, the jury's verdict, when viewed in light of the jury instructions, indicates that it found insufficient evidence to convict Kleve of the first degree charge. The jury instructions explicitly distinguished between first and second degree murders

and limited the circumstances under which the jury could convict Kleve of the second degree charge. We must assume that the jury, in acquitting Kleve of the first degree charge and convicting him of the second degree charge, followed its instructions. *See Jones v. United States*, —— U.S. ——, ——, 119 S.Ct. 2090, 2104, —— L.Ed.2d —— (1999).

As *Cortez* indicates, the jury instructions here were internally inconsistent.[2] The jury instructions explained that, in order to convict Kleve of conspiracy to commit murder, the jury had to make the threshold determination that Kleve possessed "malice aforethought." Further, in order to convict Kleve of conspiracy, the jury had to find the "specific intent to agree to commit the public offense of murder." The *Cortez* court explained that this specific intent determination constitutes a finding of premeditation and deliberation. *See Cortez*, 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537.

In Kleve's case, the jury was instructed that it next had to determine the degree of the murder. The jury was instructed that a "deliberate and premeditated killing" is "murder of the first degree." However, the jury was instructed that, if "the evidence is insufficient to establish deliberation and premeditation," it should deem the murder to be second degree. The instructions also specifically cautioned the jury that "if you have a reasonable doubt

---

1. We reached a consistent result in another context when the Supreme Court concluded that 8 U.S.C. § 1326(b)(2) makes the existence of a prior aggravated felony conviction a sentencing factor, but that the statute does not create a separate criminal offense. *See Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998). Following *Almendarez–Torres*, we consistently reversed § 1326(b) convictions because defendants convicted of violating § 1326(b) had been convicted of something that is not a crime. *See, e.g., United States v. Alviso*, 152 F.3d 1195, 1199–1200 (9th Cir. 1998).

2. Because the error here was in the formulation of the jury instructions, we do not have a

situation of alleged "inconsistent verdicts." Kleve is not seeking to attack his second degree conviction on the basis that it cannot be reconciled with the jury's acquittal on the first degree charge, which is a very different situation that was addressed by the Supreme Court in *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Kleve's argument for vacating the second degree acquittal has nothing whatsoever to do with the first degree charge. Simply put, he was convicted of something that is not a crime. Rather than the *petitioner* attempting to use the jury's acquittal on one charge to invalidate the conviction on another, here the *majority* uses Kleve's conviction on one charge to invalidate the acquittal on another charge.

whether such murder was of the first or of the second degree, you must give the defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree." The majority relies solely on the jury's finding that Kleve possessed the requisite mental state for conspiracy, which, *Cortez* indicates, "necessarily establishes premeditation and deliberation." *Id.* at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537. But the Supreme Court has "cautioned that instructions must be evaluated not in isolation but in the context of the entire charge." *Jones*, — U.S. at —, 119 S.Ct. 2090, 2103. The majority thus errs in attempting to minimize the jury's contrary finding: at the same time that the jury determined that Kleve had conspired, it necessarily found the evidence of premeditation and deliberation to be lacking.

We know from *Cortez* that the jury could not have believed that Kleve acted on the basis of a "mere unconsidered and rash impulse," because the specific intent inherent in a conspiracy finding logically cannot be reconciled with the sort of rash actions that form the basis for a second degree murder conviction. *See* 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537. There is also absolutely no factual basis for a conclusion that Kleve had insufficient time to premeditate because Kleve and Calley were driving around for approximately three hours. Moreover, the type of murder alleged here—a contract killing—is not susceptible to the sort of rash decision that can result in a second degree murder conviction. Therefore, based on the jury instructions, the jury must have found that there was insufficient evidence of deliberation and premeditation or, in other words, that it harbored a reasonable doubt whether the conspiracy to commit murder was of the first degree. I thus find remarkable the majority's conclusion that Kleve actually benefitted from the

jury's "undeserved leniency" because he should have been convicted of conspiracy to commit first degree murder. The fact remains that he was not convicted of the first degree charge, and the jury instructions plainly indicate why.

The jury's conclusion is also supported by the evidence presented at trial, which was fairly weak as to Kleve. The evidence against Kleve amounted to little more than Kleve's presence in a car with the obviously-culpable Calley and his unlikely alibi that they were searching for an apartment for three hours. *Compare United States v. Wiseman,* 25 F.3d 862, 865 (9th Cir. 1994) (reversing conspiracy conviction of driver of car that was loaded with marijuana, despite strong odor of marijuana in car). "The inferences arising from keeping bad company are not enough to convict a defendant for conspiracy." *United States v. Ramos–Rascon,* 8 F.3d 704, 711 (9th Cir.1993); *see also Wiseman,* 25 F.3d at 865 ("Mere casual association with conspiring people is not enough."). Because of Kleve's improbable explanation, the evidence may have been barely sufficient to sustain a first degree conviction.[3] Even so, it remains true that "the only evidence submitted by the government is wholly susceptible to innocent explanations." *Wiseman,* 25 F.3d at 867. In light of the entirely circumstantial and not very substantial evidence, it is not surprising that the jury was unable to conclude beyond a reasonable doubt that Kleve had expressly agreed to commit first degree murder. Moreover, it is noteworthy that this was the second jury that failed to convict Kleve; the first jury deadlocked on the conspiracy to commit murder charge.

Second, I disagree with the majority's suggestion that malice aforethought and the specific intent to conspire form a sufficient basis for a conspiracy to commit murder conviction. *Cortez* does not fully re-

---

**3.** In light of my conclusion that we must reverse Kleve's conviction because it is for a crime that does not exist under California law, I see no need to resolve the sufficiency of the evidence question. Although we might

have upheld a first degree conviction if it had occurred, because it did not in fact occur, we lack the authority to recast the second degree conviction as a first degree conviction.

solve the case before us because the issue presented there was whether the trial court properly refused to give a jury instruction on second degree murder. *See* 18 Cal.4th at 1238, 77 Cal.Rptr.2d 733, 960 P.2d 537. The *Cortez* court held that the trial court acted properly because all conspiracy to commit murder is first degree murder. *See id.* at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537. The critical difference between this case and *Cortez* is that, in *Cortez*, there was no second degree murder instruction to create conflict with the conspiracy instruction. The *Cortez* majority could thus rely on the jury's uncontraverted specific intent finding made in the conspiracy context.

Therefore, that the *Cortez* court deemed sufficient jury instructions that required a finding of malice aforethought but did not specifically mention premeditation or deliberation is not dispositive. The malice aforethought instruction was adequate only because the jury had already made the necessary finding of premeditation and deliberation in adjudging the defendant guilty of conspiracy. *See id.* The *Cortez* court expressly repudiated the dissent's argument that the court was lowering the state of mind required to convict a person of conspiracy to commit murder. "We are not concluding [that] conspiracy to commit murder 'requires only intent to kill'[4]—we are instead merely recognizing that the mental state required for conspiracy to commit express malice murder *necessarily equates with and establishes the mental state of deliberate and premeditated first degree murder.*" *Id.* at 1232 n. 3, 77 Cal.Rptr.2d 733, 960 P.2d 537 (emphasis added). Therefore, in order to affirm Kleve's conviction we must, at a minimum, be able to say with confidence that the jury found that he had the necessary mental state of deliberation and premeditation. Yet the jury instructions, when read in their totality, vitiate any such finding. We have no way of resolving the conflict between the jury's antithetical findings that Kleve had the specific intent necessary for conspiracy and that there was insufficient evidence or a reasonable doubt regarding whether he acted with deliberation and premeditation. As we stated in *Suniga,* "we cannot assume that the jury simply ignored the [erroneous] instruction." 998 F.2d at 669.

Given this uncertainty, we definitely cannot say, *beyond a reasonable doubt,* that the jury found the necessary elements for a first degree conviction. *Cf. Neder v. United States,* —— U.S. ——, ——, 119 S.Ct. 1827, 1834–35, 144 L.Ed.2d 35 (1999) (setting forth the standard for harmless error review).[5] The equivocal tone of the majority opinion attests to this fact. Indeed, I cannot imagine what more the jury could have done to indicate that it found the evidence on the first degree charge to be lacking. Given the jury's decision to acquit on the first degree charge and *Cortez* ' holding that conspiracy to commit second degree murder is not a crime, I cannot agree with the majority's affirmance of Kleve's second degree conviction. The majority not only usurps a proper jury function, but also relies on faulty guesswork in concluding that Kleve "could" have been convicted of the first degree charge. The Constitution "requires more than appellate speculation about a hypothetical jury's action ... it requires an actual finding of guilt." *Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078.

---

**4.** The jury instructions given in Kleve's case defined malice aforethought as "an intention unlawfully to kill a human being."

**5.** Of course, harmless error analysis does not apply here because the presupposition of that doctrine is that there was an actual convic-

tion. As I have stated, the jury's decision to acquit Kleve of the only valid crime for which he was charged should end the inquiry. The majority nonetheless undertakes a speculative inquiry that it does not term harmless error analysis but seems to be the "functional equivalent."