Thomas Charles KLEVE, Petitioner–Appellant,

v.

D.R. HILL, Warden CCI; J. Gomez; Attorney General of the State of California; Daniel E. Lungren, Attorney General, Respondents–Appellees.

No. 97–56182.

United States Court of Appeals, Ninth Circuit.

Order and Dissent Filed Jan. 21, 2000.

Order Filed Jan. 25, 2000.

Before: D.W. NELSON, FERNANDEZ, and W. FLETCHER, Circuit Judges.

### ORDER

The ORDER DENYING REHEARING with DISSENT, filed January 21, 2000, is hereby redesignated FOR PUBLICATION.

### ORDER DENYING REHEARING

The panel, as constituted above, has voted as follows: Judges Fernandez and W. Fletcher voted to deny the petition for rehearing and the petition for rehearing en banc; Judge D.W. Nelson voted to grant the petition for rehearing and recommended granting the petition for rehearing en banc.

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R.App. P. 35(f).

The petition for rehearing and the petition for rehearing en banc are DENIED.

KOZINSKI, Circuit Judge, with whom Chief Judge HUG and Judges PREGERSON, REINHARDT, HAWKINS, THOMAS, McKEOWN and FISHER join, dissenting from the order denying the petition for rehearing en banc:

Count I of the information charged petitioner Thomas Kleve with conspiracy "to

commit the crime of 1st degree murder, in violation of Section 187 of the Penal Code, a felony...." Of this, the jury acquitted him: "We, the Jury in the above-entitled action, find the Defendant Thomas Charles Kleve not guilty of conspiracy to commit a crime of murder of the first degree, in violation of Penal Code Section 182(1), a Felony as charged in Count I of the information." Kleve has nevertheless spent the last ten years in prison. Why? Because the jury convicted him of conspiracy to commit murder in the *second* degree, which the trial judge believed was a lesser included offense. But, as we now know, "there is no crime of conspiracy to commit second degree murder under California law...." *Kleve v. Hill,* 185 F.3d 1009, 1011 (9th Cir.1999) (citing *People v. Cortez,* 18 Cal.4th 1223, 1237–38, 77 Cal.Rptr.2d 733, 960 P.2d 537 (1998)). So Kleve has spent a decade in prison convicted of something that is not a crime.

The panel nevertheless abandons Kleve to his 15–years–to–life sentence on the theory that the jury convicted him of the "functional equivalent" of conspiracy to commit first degree murder—the very crime of which the jury *acquitted* him. *Kleve,* 185 F.3d at 1014.[1] This conclusion is nothing short of bizarre. A criminal defendant cannot be imprisoned unless the jury finds beyond a reasonable doubt every element of something that is in fact a crime. If the jury finds defendant "guilty" of something that is not a crime, he must go free. If the jury finds that an element of an actual crime was not proved beyond a reasonable doubt, again, the defendant must go free. Here, both circumstances are present: The jury found Kleve guilty of conspiracy to commit second degree murder, which the California Supreme Court has said is not a crime. The jury simultaneously acquitted him of conspiracy

to commit murder in the first degree, which must mean that it had a reasonable doubt about whether Kleve acted with deliberation and premeditation—a necessary element for conviction of conspiracy to commit murder.

We know that the jurors had doubts about deliberation and premeditation because they were instructed that deliberation and premeditation marks the boundary line between first degree murder and second degree murder: "Murder of the second degree is also [2] the unlawful killing of a human being with malice aforethought where there is manifested an intention unlawfully to kill a human being *but the evidence is insufficient to establish deliberation and premeditation.*" Trial Transcript at 365 (emphasis added). As Judge Nelson points out in her cogent dissent, the jury's determination that Kleve was *not* guilty of conspiracy to commit first degree murder but *was* guilty of conspiracy to commit second degree murder can only mean that it found that premeditation and deliberation had not been proven. *See Kleve,* 185 F.3d at 1016 (Nelson, J., dissenting). Yet, under California law, a defendant who acted without premeditation and deliberation cannot be guilty of violating Penal Code section 182(1). *See Cortez,* 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537. In finding Kleve guilty of a charge that expressly omitted any requirement of premeditation and deliberation, the jury convicted Kleve of a non-existent crime. It follows as night the day that Kleve is being held unlawfully and must be released.

The panel majority reaches the contrary conclusion by a chain of reasoning that defies common sense. It holds that his conviction on a count that expressly omitted premeditation and deliberation as an element requires the inference that the

---

1. Adding insult to injury, the majority chides Kleve for not appreciating the "undeserved leniency" with which he was sentenced. *Kleve,* 185 F.3d at 1014. It is a strange kind of leniency that results in the imprisonment for life—and such is the likely consequence under California's current policies—of a man who has not been convicted of any crime.

2. The word "also" in this instruction refers back to the definition of first degree murder. The court gave the jury no other definition of second degree murder.

jury did in fact find that he acted with premeditation and deliberation. The California Supreme Court in *Cortez* did, indeed, hold that premeditation can be inferred from defendant's participation in a conspiracy. But the *Cortez* jurors were not separately instructed on first and second degree murder; nor did they acquit Cortez of conspiracy to commit murder in the first degree; nor did they convict him on the lesser (non-existent) charge which they had been told did *not* include deliberation and premeditation. The only clue to the jury's thinking as to Cortez's state of mind was its verdict that he was guilty of conspiracy. Under those circumstances, the California Supreme Court held that premeditation could be inferred. *See Cortez,* 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537.

In Kleve's case, by contrast, the jury was (mistakenly) instructed on first and second degree murder, and was told that the difference between the two hinged on the presence or absence of premeditation and deliberation. It was also told—as required by California law, *see Cortez,* 18 Cal.4th at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537, *People v. Swain,* 12 Cal.4th 593, 602, 49 Cal.Rptr.2d 390, 909 P.2d 994 (1996)—that to find defendant guilty it had to find *two separate* mental states: (1) "the specific intent to agree to commit the public offense of murder" and (2) "the further specific intent or mental state to commit such offense." Trial Transcript at 365–66. The jury was also thrice warned that it was required to give defendant the benefit of every doubt, particularly when it came to his state of mind:

> [Y]ou may not find the defendant guilty of the offense charged in Count I, unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required specific intent or mental state but (2) *cannot be reconciled with any other rational conclusion.*

*Id.* at 361 (emphasis added). And again:

> Also, if the evidence as to any such specific intent or mental state is susceptible to two reasonable interpretations, one of which points to the existence of the specific intent or mental state and the other to the absence of the specific intent or mental state, *you must adopt that interpretation which points to the absence of the specific intent or mental state.*

*Id.* (emphasis added). And yet again:

> If you are convinced beyond a reasonable doubt that the crime of murder has been committed by defendant, but you have a reasonable doubt whether such murder was of the first or second degree, *you must give defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree.*

*Id.* at 365 (emphasis added).

Having been told that it was required to find two separate states of mind, one pertaining to the conspiracy and the other pertaining to the underlying crime itself, and having been cautioned to give defendant the benefit of all doubts, the jury's verdict acquitting Kleve of conspiracy to commit first degree murder is perfectly plausible: The jury found that he had agreed to the conspiracy, but it also found that he had not engaged in the kind of careful weighing and pondering that amounts to premeditation. In reaching this conclusion, the jury was guided by another instruction which emphasized that Kleve did not act with deliberation and premeditation unless he weighed the matter carefully:

> To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill.

*Id.* at 364.

In this case we cannot infer that "where two or more persons conspire to commit murder . . . each has acted with a state of mind 'functionally indistinguishable from the mental state of premeditating the target offense of murder,'" *Cortez,* 18 Cal.4th

at 1232, 77 Cal.Rptr.2d 733, 960 P.2d 537 (quoting *Swain,* 12 Cal.4th at 608–09, 49 Cal.Rptr.2d 390, 909 P.2d 994), for the simple reason that we may not infer something that is contrary to a specific jury finding. By acquitting Kleve of conspiracy to commit first degree murder, the jury necessarily found that premeditation and deliberation was absent—or, at least, that there was a reasonable doubt.

Recognizing that the jury's acquittal of first degree murder presents a hurdle to its analysis, the majority shrugs it off as "simply inconsistent" with the jury's finding that Kleve agreed to a conspiracy. Citing *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the panel holds that we may ignore the inconsistency as merely an exercise of the jury's lenience. *See Kleve,* 185 F.3d at 1013. For the reasons explained above, I do not believe there is any inconsistency between the finding that Kleve participated in the conspiracy and the finding that he lacked premeditation; the jury simply made separate findings as to the two states of mind, as it was instructed to do.[3] But even if we assume that the two parts of the verdict are inconsistent, *Powell* does not apply. *Powell* holds that *where the jury is properly instructed* and nevertheless returns inconsistent verdicts, we will not question the validity of the guilty verdicts on some counts just because they are logically inconsistent with not guilty verdicts on other counts. *Powell* recognized that, in such a case, the jurors must have disregarded the instructions at some point in their deliberations, but "it is unclear

whose ox has been gored" thereby. *Powell,* 469 U.S. at 65, 105 S.Ct. 471. There is no reason to presume the jury disregarded the instructions when it found the defendant guilty; it could just as easily have ignored the instructions when it found defendant innocent, exercising its power of nullification to show mercy. *Id.* Thus a verdict entered by a properly instructed jury will stand, despite any inconsistency with verdicts on other counts.

For *Powell* to apply, the jury must have been given a correct, consistent set of instructions. *Powell* does not apply to a case like Kleve's where the jury seems to have followed the instructions scrupulously: The court instructed it to determine whether there was a conspiracy, and the jury found that there was. The court also instructed the jury to determine whether the conspiracy was one to commit murder in the first or second degree, and the jury dutifully found that the conspiracy was one to commit murder in the second degree. Any inconsistency between those verdicts did not arise because the jury chose to exercise mercy by ignoring the judge's instructions. Rather, the inconsistency was dictated by the erroneous and inconsistent instructions.

Under these circumstances, we may not shrug off the jury's acquittal of conspiracy to commit first degree murder as inconsequential. Instead, we must presume that the jury followed the instructions it was given and found that Kleve did not act with premeditation and deliberation. As a jury finding made pursuant to instructions

---

3. The panel majority seems to assume that conspiracy to commit second degree murder is an oxymoron because no jury could find intent to conspire, yet conclude that the defendant lacked deliberation or premeditation. In fact, intent and premeditation are separate concepts; one can be inferred from the other, as the court did in *Cortez,* but they are not the same. Indeed, second degree murder is an intentional killing that is committed without deliberation and premeditation. *See* page 1156 *supra.* A majority of the California Supreme Court at one time was of the view that conspiracy to commit second degree murder is possible, *see People v. Horn,* 12 Cal.3d 290,

298 n.5, 115 Cal.Rptr. 516, 524 P.2d 1300 (1974), and one member of that court still considers it so. *See Cortez,* 18 Cal.4th at 1245, 77 Cal.Rptr.2d 733, 960 P.2d 537 (Kennard, J., dissenting). Of equal significance, we have recently held that conspiracy to commit second degree murder is a crime recognized under federal law. *See United States v. Croft,* 124 F.3d 1109, 1122–23 (9th Cir.1997). In so doing, we followed the reasoning of the Fifth Circuit in *United States v. Chagra,* 807 F.2d 398 (5th Cir.1986). Conspiracy to commit second degree murder may not be a crime under California law, but it is not a logical impossibility.

given to it by the trial court, the determination that Kleve did not act with premeditation and deliberation is binding and cannot be ignored. Applied correctly to this case, *Powell* requires that the jury's verdict of acquittal on the only lawful offense be respected, and that its verdict on a charge that does not constitute a crime be deemed null and void. The panel's opinion clearly misapplies *Powell.*

Perhaps even more important, we must give the jury's verdict of acquittal the dignity to which it is entitled under the Constitution. Whether a jury properly follows the court's instructions or not, a verdict of acquittal is final and not subject to attack. It bars any other conviction on that same charge. Kleve was acquitted by a jury of the only lawful charge brought against him. He may not be held liable on that same charge by using a conviction for a non-existent offense to override the verdict of acquittal.

Faced with the identical question, the Fifth Circuit came to precisely the opposite conclusion as the panel in our case. In *Adams v. Murphy,* 653 F.2d 224 (5th Cir.1981), the petitioner had been charged with perjury. At petitioner's request, the judge reluctantly gave an instruction on " 'attempted perjury' as a lesser-included offense," and the jury found petitioner " 'guilty of the lesser included offense of attempted perjury.' " *Id.* at 224. On federal habeas, the Fifth Circuit certified to the Florida Supreme Court the question of whether the crime of attempted perjury existed under Florida law. When the Florida Supreme Court responded that no such crime existed, *see id.* at 224–25 (citing *Adams v. Murphy,* 394 So.2d 411 (Fla. 1981)), the Fifth Circuit thought it self-evident that petitioner had to be released because "[n]owhere in this country can any man be condemned for a nonexistent crime." *Id.* at 225.

There are only two material differences between Kleve's case and Adams's. In *Adams* the error was invited by defense counsel, while in Kleve's case the trial court gave the instruction sua sponte based on the then-prevailing understanding of California law.[4] *See Horn,* 12 Cal.3d at 298 n.5, 115 Cal.Rptr. 516, 524 P.2d 1300 (stating in dicta that Penal Code section 182(1) authorized a verdict of conspiracy to commit second degree murder). Second, the jury in Adams's case acquitted him of perjury only implicitly, *see Adams,* 653 F.2d at 225, while in our case the jury acquitted Kleve of conspiracy to commit first degree murder explicitly. *See Kleve,* 185 F.3d at 1010. Both differences cut in Kleve's favor; it is impossible to reconcile our ruling in *Kleve* with the Fifth Circuit's ruling in *Adams.* The panel's opinion creates a square conflict with the Fifth Circuit.

In the end, Kleve's case can be viewed in one of two ways. The most straightforward—the one adopted by the Fifth Circuit in *Adams*—is to take the jury at its word: It found defendant guilty of a crime that the state supreme court now tells us does not exist, in which case Kleve is guilty of nothing and must be released at once. But the case could also be viewed in a slightly different way: The jury acquitted Kleve of conspiracy to commit first degree murder and thereby determined that he acted without premeditation and deliberation. Since the state supreme court has held that conspiracy to commit murder under section 182(1) necessarily involves premeditation and deliberation, this acquittal is res judicata as to an element of the offense and, again, Kleve must be released. What we may not do is ignore the jury's findings and substitute our own suppositions for them. *See Sullivan v. Louisiana,* 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

Kleve was tried twice and both juries failed to convict him of conspiracy to commit murder in the first degree. As point-

---

**4.** After reading the jury instructions, the trial judge stated, "I'd like the record to reflect that as to the jury instructions, neither side requested lesser-included instructions as to Count I.... [T]he court sua sponte is indicating first and second degree [murder]."

ed out by Judge Nelson, this is doubtless because the evidence against Kleve was very weak. The first jury—which was not given the option of finding him guilty of conspiracy to commit murder in the second degree—hung. The second jury, given a choice between conspiracy to commit first and second degree murder, acquitted him of the former and convicted him of the latter. We may not guess what the jury would have done had it been properly instructed. *See, e.g., Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 1845, 144 L.Ed.2d 35 (1999) (Scalia, J., concurring in part and dissenting in part) ("It is not within the power of us Justices to cancel th[e] reservation [of criminal verdicts to the jury]—neither by permitting trial judges to determine the guilt of a defendant who has not waived the jury right, nor ... by reviewing the facts ourselves and pronouncing the defendant without-a-doubt guilty."); *Carella v. California,* 491 U.S. 263, 268, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring in the judgment) (noting that right to jury trial "is a structural guarantee that 'reflects a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges'") (quoting *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). The only thing we know for sure is that the crime of which the jury convicted Kleve does not exist under the law of California. California therefore has no authority to retain him in custody because "[n]owhere in this country can any man be condemned for a nonexistent crime." *Adams,* 653 F.2d at 225.

The panel's opinion adds a qualifier to this previously uncontroversial and incontrovertible proposition: "Nowhere—except in the Ninth Circuit." Because the panel's ruling is at loggerheads with the most fundamental principles of due process, egregiously misapplies *United States v.*

---

5. Actually, since *Adams* is an opinion of the old Fifth Circuit, it also puts us in conflict with the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Powell* and puts us in direct conflict with the Fifth Circuit,[5] I respectfully dissent from our court's failure to grant the petition for rehearing en banc.