**Darrick MARTINEZ, Petitioner–Appellant,**

v.

**Rosie GARCIA, Respondent–Appellee.**

No. 02–56678.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 2003.

Filed June 10, 2004.

Amended Aug. 13, 2004.

Marilee Marshall, Pasadena, CA, for the petitioner-appellant.

Warren P. Robinson, Deputy Attorney General, San Diego, CA, for the respondent-appellee.

Before RUGGERO J. ALDISERT,* TALLMAN, and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge.

We presume that a jury follows the instructions given by the trial court. *Ho v. Carey*, 332 F.3d 587, 594 (9th Cir.2003). When the instructions, however, combine

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

two theories of guilt, one of which is untenable, and we cannot discern upon which theory the jury convicted, structural error has occurred. The state court's decision upholding Martinez's conviction was contrary to clearly established federal law. Accordingly, the district court's denial of Martinez's habeas petition challenging Count 2 of his conviction is reversed.[1] For reasons stated in the memorandum disposition issued contemporaneously with this opinion, we affirm the denial of Martinez's petition on all other grounds.

## I. BACKGROUND

The Petitioner, Darrick Martinez, was charged in an information with the attempted murder of Peter Anthony Jimenez; the attempted murder of Robert Paul Jimenez; and shooting at an inhabited dwelling.

Peter Jimenez testified that he was in the living room at his brother's house when he responded to a knock at the front door. He saw Martinez through the screen door. Martinez asked Jimenez to open the door. Jimenez noticed that Martinez's hands were trembling and that he was holding something shiny. With the gun extended arm's length, Martinez shot Jimenez in the chest area. Jimenez was also shot in the back as he ran. Jimenez identified Martinez as the person who shot him.

Robert Jimenez, Peter Jimenez's brother, testified that he was awakened by gunshots. When he went to the kitchen, he found his brother, Peter Jimenez, lying on the floor. After discovering that the kitchen telephone was inoperative, Robert started toward his room to retrieve a cordless phone, and was hit on the side of his chest by a second round of gunshots. He did not see who shot him.

Karen Cervantes, the girlfriend of Robert's son, testified that she heard a bang on the front door and then gunshots. She also heard Martinez, her cousin, yelling outside the house.

Martinez's brother, Rocky Martinez, and their mother, testified that, except for approximately five minutes, when they went next door to their cousin's house, both brothers were at their mother's home all evening.

Martinez denied shooting the Jimenez brothers and asserted that he was at his mother's house at the time of the incident.

Martinez was charged in an information with the attempted murder of Peter Anthony Jimenez (Count I); the attempted murder of Robert Paul Jimenez, Sr. (Count II); and shooting at an inhabited dwelling (Count III). During trial, the prosecution amended the information to allege that the attempted murders were willful, deliberate, and premeditated.

The trial court instructed the jury on both premeditation and transferred intent in relation to the attempted murder charges. Instruction Number 35 read:

If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and pre-meditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate and premeditated murder.

The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary

---

**1.** Martinez raised other issues on appeal, which are disposed of in a memorandum disposition filed contemporaneously with this opinion.

with different individuals and under varying circumstances.

The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation.

To constitute willful, deliberate and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being.

The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

You will include a special finding on that question in your verdict, using a form that will be supplied for that purpose.

Instruction Number 36 read:

When one attempts to kill a certain person, but by mistake or inadvertence injures a different person, the crime, if any, so committed is the same as though the person originally intended to be killed had been injured.

The jury found Martinez guilty on all counts. However, the jury verdict form relating to the allegation that Martinez will-fully and deliberately attempted to murder Robert Jimenez either contains a mistake or is evidence that the jury found Martinez guilty based upon the transferred intent theory. The form is labeled, "First Allegation as to Count 2[the count regarding Robert Jimenez]," while the body of the form states that: "We ... find the allegation as to Count 1[the count regarding Peter Jimenez], that defendant, Darrick Martinez, committed the aforesaid attempted murder willfully, deliberately and with premeditation ..."

The California Court of Appeal affirmed Martinez's conviction. Martinez subsequently filed a federal habeas petition. The assigned magistrate judge recommended that the district court deny Martinez's federal habeas petition. The district court adopted the magistrate judge's recommendation and entered judgment dismissing Martinez's habeas petition. Martinez filed a timely appeal.

## II. STANDARD OF REVIEW

We review *de novo* the district court's denial of a habeas corpus petition. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable, since Martinez filed his petition after AEDPA's effective date. *See id.*

"[W]e may not grant federal habeas relief" unless the state appellate court's [2] "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." *Id.* (citation and internal quotation marks omitted). "A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Id.* (citation omitted). "A state court's decision involves an unreasonable application

2. Because the California Supreme Court denied Martinez's petition summarily, we review the California Court of Appeal decision on habeas review as the last reasoned state court decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000).

of federal law if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation and internal quotation marks omitted) (alteration in the original). "Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Id.* (citation omitted).

## III. DISCUSSION

The California Court of Appeal and the district court proceeded on the assumption that the transferred intent instruction was inapplicable to Martinez's attempted murder charges and should not have been given. We must therefore determine whether the transferred intent jury instruction introduced structural error into the trial by inviting an improper theory of culpability in Martinez's trial.

The courts' assumptions that the transferred intent instruction was malaprops are well grounded in California case law. In *People v. Czahara*, 203 Cal.App.3d 1468, 250 Cal.Rptr. 836 (1988), the California Court of Appeal considered the precise transferred intent instruction given in Martinez's case. *Id.* at 1472, 250 Cal.Rptr. 836. It concluded that:

> The purpose of the transferred intent rule—to ensure that prosecution and punishment accord with culpability—would not be served by convicting a defendant of two or more attempted murders for a single act by which he intended to kill only one person ... there is a difference in culpability between an assailant who deliberately sets out to kill one person and in addition kills another accidentally, and one who deliberately kills two victims. Application of the transferred intent rule to the former would wipe out that distinction.

*Id.* at 1474, 250 Cal.Rptr. 836 (citation omitted). The court subsequently held that the instruction was prejudicial:

> We cannot say that the instructional error was harmless. While there was evidence of hostility between Czahara and Johnson which, together with the manner of the attack, would support an inference that Czahara intended to shoot both victims, the jury could easily have entertained a reasonable doubt as to whether Czahara intended to shoot Johnson. Christie testified that the defendant aimed the first shot directly at her; there was no testimony showing at whom the second shot was aimed ... The conviction for attempted murder of Johnson must therefore be reversed....

*Id.* at 1475–76, 250 Cal.Rptr. 836.

This California case demonstrates the importance of the intent requirement for attempted murder and the manner in which transferred intent instructions undermine this pivotal requirement if applied inappropriately by the trial court.

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (citation omitted). "Jury instructions relieving States of this burden violate a defendant's due process rights." *Id.* (citations omitted).

In *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), the United States Supreme Court established that, with respect to ambiguous jury instructions, "[i]n some instances ... we have held that when a case is submitted to the jury on alternative theories[,] the unconstitutionality of any of the theories requires that the conviction be set aside." *Id.* at 379–80, 110 S.Ct. 1190 (citations and

internal quotation marks omitted). "In those cases, a jury is clearly instructed by the court that it may convict a defendant on an impermissible legal theory, as well as on a proper theory or theories." *Id.* at 380, 110 S.Ct. 1190. "Although it is possible that the guilty verdict may have had a proper basis, it is equally likely that the verdict ... rested on an unconstitutional ground ... and we have declined to choose between two such likely possibilities." *Id.* (citation and internal quotation marks omitted) (alteration in the original).

Similarly, in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Supreme Court concluded that "[w]ith respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict." *Id.* at 376, 108 S.Ct. 1860 (citations omitted).

■ When a defendant is convicted and one of the two grounds supporting the conviction cannot withstand constitutional scrutiny on due process grounds, the trial court's mistake cannot be dismissed as harmless error. *Stirone v. United States,* 361 U.S. 212, 217, 219, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Harmless error analysis is not appropriate where the error, the transferred intent instruction, has "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). This is one of those "instructional errors [that is] so serious that [it] amount[s] to [a] structural defect[ ], 'which def[ies] analysis by "harmless-error" standards.'" *Suniga v. Bunnell,* 998 F.2d 664, 667 (1993) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

In *Suniga,* we considered whether the state trial court erroneously instructed the jury on felony-murder when the prosecution's only theory was malice aforethought. *Id.* We observed that the instruction was "an error that allowed the jury to convict Suniga on a theory of culpability that did not exist." *Id.* at 668. We therefore rejected the contention that harmless error was applicable:

> Neither can we, as the state suggests, base a harmless-error determination on the seemingly overwhelming weight of the evidence pointing to the petitioner's guilt of ... murder. Where two theories of culpability are submitted to the jury, one correct and the other incorrect, it is impossible to tell which theory of culpability the jury followed in reaching a general verdict. Here too, it is impossible to know what the jury (or some juror) did. Here, too, the writ should issue.

*Id.* at 670 (internal citation omitted) (alteration in the original).

■ The same concerns arise in this case. We cannot determine whether the jury found that Martinez committed attempted premeditated murder with respect to Robert Jimenez or whether the jury applied the transferred intent doctrine to convict Martinez. This is particularly true since the prosecution, in its opening statement and closing argument, argued premeditation with respect to the attempted murder of Peter Jimenez. However, with respect to Robert Jimenez, the prosecution relied on the transferred intent doctrine. For example, in its opening statement, the prosecution asserted:

> Now, the evidence will point to the premeditation and deliberation of the intent to kill Peter Jimenez, and the intent with regard to Robert Jimenez will be described to you under a doctrine of transferred intent. In other words, if I

mean to kill Person A and I kill Person B, if I intended to kill A, that intent transfers to Person B.

Although Robert Jimenez testified that there was a second round of gunshots, which may be indicative of premeditation, the evidence did not overwhelmingly support a conclusion that Martinez intended to murder Robert Jimenez. This is reflected by the prosecution's closing arguments:

> Now, in this particular case, in the person that went to the door, there is absolutely no evidence of heat of passion, quarrel, sudden anger. The person went, with a high-caliber weapon, to the front door to confront Peter Jimenez and attempted to kill him.

> So I think that you will find that the person at the front door on the morning of January 27 clearly attempted to kill Peter Jimenez. And as you examine the conduct of that person, it is further evidence of his intent to kill by not only does he attempt to shoot him through the front door at arm's length, but as the individual runs to the kitchen, he continues shooting, moving around the house, shooting in the direction in which Peter Jimenez parted. Further evidence of his intent to kill.

> Now, as to the injuries suffered by Robert Jimenez, the Judge also instructed you with regard to the doctrine of transferred intent ... So it is clear from the evidence that has been presented that if you find the defendant attempted—the individual at the door at this point in time attempted to kill Peter Jimenez, he obviously, then, as he continued to fire into the residence, intended to kill Robert Jimenez, Senior.

Additionally, as discussed above, the ambiguity of the special verdict form further confused the matter. We cannot know whether the body of the verdict form mistakenly references Count 1 or whether the jury actually found Martinez guilty of the attempted murder of Robert Jimenez based upon a theory of transferred intent.

The prosecution's transferred intent arguments combined with the erroneous jury instruction and the ambiguous special verdict form render it "impossible to tell which theory of culpability the jury followed in reaching a general verdict." *Suniga,* 998 F.2d at 670 (citation omitted). In particular, we are unable to tell whether the jury found premeditation for the attempted murder of both Jimenez brothers, or found premeditation with respect to the attempted murder of Peter Jimenez and then transferred that intent to Robert Jimenez pursuant to the jury instruction. If the latter finding informed the jury's verdict, the prosecution only had to establish the requisite intent for the attempted murder of Peter Jimenez, but not for that of Robert Jimenez.

The transferred intent jury instruction amounts to structural error because it permitted the jury to convict on two alternative theories, one of which was an impermissible legal ground. "Because a jury's deliberations are secret and unreported, we have no way of determining" which theory of conviction was the basis of the jury's guilty verdict. *Ho,* 332 F.3d at 596; *see also Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (implying that harmless error analysis is impermissible where the trial error cannot be "quantitatively assessed in the context of other evidence").

The California Court of Appeal did not identify or apply *Carella, Boyde,* or *Mills* in its cursory analysis of the transferred intent issue. Neither did it discuss the concept of structural error. Rather the California Court of Appeal focused on whether, in the court's view, there was sufficient evidence to support the attempt-

ed murder count involving Robert Jimenez.

The state court's failure to apply the precepts governing undifferentiated alternative theories of conviction resulted in a decision that is contrary to the clearly established federal law articulated in *Carella*, *Boyde*, and *Mills*.

As we have discussed, the erroneous jury instructions made it impossible to determine whether the jury convicted Martinez of the attempted murder of Robert Jimenez on a pre-meditation theory, which was legally permissible, or on a transferred intent theory, which was legally impermissible. This circumstance deprived Martinez of his rights under the due process clause of the Fourteenth Amendment. *See Carella*, 491 U.S. at 265, 109 S.Ct. 2419. This deprivation is not subject to harmless error analysis because it negatively permeated the fundamental structure of Martinez's trial. *See Suniga*, 998 F.2d at 667.

Because the California Court of Appeal's affirmance of Martinez's conviction for the attempted murder of Robert Jimenez was contrary to clearly established federal law, we REVERSE the district court's denial of Martinez's habeas petition insofar as it denies relief for the erroneous transferred intent instruction. We remand with instructions to grant that part of Martinez's petition unless the state, within a time to be established by the district court, elects to re-try Martinez on the attempted murder of Robert Jimenez.

**REVERSED and REMANDED.**