**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

AURORA TREVINO,
*Defendant-Appellant.*

No. 02-10545

D.C. No.
CR-00-05432-1-
REC

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
PETITION FOR
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Robert E. Coyle, District Judge, Presiding

Argued and Submitted
February 11, 2004—San Francisco, California

Filed January 18, 2005
Amended August 16, 2005

Before: A. Wallace Tashima and Richard R. Clifton,
Circuit Judges, and Ronald B. Leighton,* District Judge.

*The Honorable Ronald B. Leighton, United States District Judge for
the Western District of Washington, sitting by designation.

10685

Opinion by Judge Leighton;
Partial Concurrence and Partial Dissent by Judge Tashima

## COUNSEL

Anthony P. Capozzi, Fresno, California, for the defendant-appellant.

MacGregor W. Scott, United States Attorney, Jonathan B. Conklin, Assistant U.S. Attorney, Fresno, California, for the plaintiff-appellee.

## ORDER

The opinion and partially dissenting opinion, filed January 18, 2005, and reported at 394 F.3d 771, are withdrawn and replaced by the amended opinion and amended partially dissenting opinion filed concurrently with this order. With the amended opinion and amended partially dissenting opinion, the panel has voted to deny the petition for panel rehearing, with Judge Tashima voting to grant it. Judge Clifton has voted to deny the petition for rehearing en banc and Judges Tashima and Leighton so recommend.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f).

The petition for panel rehearing and petition for rehearing en banc are denied.

## OPINION

LEIGHTON, District Judge:

Aurora Trevino appeals her convictions for conspiracy to defraud the United States (18 U.S.C. §371) and attempting to evade or defeat a tax (26 U.S.C. §7201). The convictions

resulted from erroneous tax returns prepared and filed on Trevino's behalf by her accountant, Salvador Archuleta, for the 1989, 1990, 1991, and 1992 tax years. Trevino sought and was denied a new trial in the district court. She was sentenced to ten months in prison.

She appeals, making three arguments: (1) the trial court erred in failing to instruct the jury that her good faith belief that her tax returns were proper was a complete defense to the charges against her; (2) the prosecutor engaged in misconduct; and (3) Jury Instruction number 44 impermissibly created a presumption of her knowledge of the contents of her erroneous 1992 tax return. Trevino also seeks a remand of her sentence pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

We affirm and remand.

## I.

Since 1985, Aurora Trevino has owned and operated Aurora's Flowers, selling silk flower arrangements from stores in Dinuba and Fresno, California. Since 1989, she has used the accounting services of Salvador Archuleta. In 1993, the IRS began investigating Archuleta, and in his office found versions of Trevino's 1991 and 1992 tax returns which were different than the returns filed with the IRS for those years. In 1994, the IRS audited Trevino's 1991 tax return, which confirmed that she had made significantly more profit than she reported to the IRS.

Trevino was eventually charged with conspiracy to defraud the United States for her 1989, 1990, 1991, and 1992 tax returns (Count One), attempting to evade or defeat a tax for 1991 (Count Two), and attempting to evade or defeat a tax for 1992 (Count Three).

Archuleta was charged with falsifying tax returns on behalf of his clients. He pleaded guilty and his potential sentence of

35 months was reduced to 21 months, in exchange for his guilty plea and his agreement to cooperate with the government in various cases, including Trevino's.

At trial, the government introduced evidence that Trevino owned the Dinuba business location, her residence, and three rental properties. It also showed that, in connection with a residential loan application, she and her husband had represented to their bank that they had a gross monthly income of $13,050 and a net worth of $633,142.

Archuleta claimed that, in 1989, Trevino offered him her accounting business if he could reduce her tax liability. He did so for the tax years at issue primarily by falsely increasing the "cost of the goods" component of her tax calculation on each return's Schedule C. This was demonstrated at trial in part by comparing monthly "profit and loss" statements Archuleta prepared for Trevino with the profit calculations incorporated into her various tax returns.

Schedule C to Trevino's 1989 return showed a net profit of $70,445, while the profit and loss statement Archuleta prepared for her showed a net profit of $179,169. The IRS calculated Trevino's actual 1989 profit at $197,758.

For 1990, Schedule C reported a net profit of $65,516, while Trevino's profit and loss statement showed a net profit of $145,844. The IRS calculated her 1990 profit at $132,270.

Trevino's 1991 Schedule C reported a net profit of $22,933, and the profit and loss statement Archuleta prepared for her showed $198,497. The IRS also introduced a different return, which was not filed with the IRS, reflecting a net profit of $86,714. Trevino did not sign her 1991 tax return. The IRS calculated Trevino's profit for 1991 at $114,025.

For 1992, Schedule C showed $44,589 and Archuleta's profit and loss statement showed $235,396. The IRS calculated Trevino's actual profit for 1992 at $162,289.

Trevino testified that the monthly profit and loss statements prepared for her were incorrect, but she did not know why. She testified that she would sign the inaccurate returns without knowing they were false and without question of or explanation by Archuleta; she claimed he "never told her anything" about the returns or her tax liability. Her primary defense at trial was that she was "suggestible and dependant" (a position offered by a clinical psychologist testifying as an expert) and that she simply did not know that Archuleta was doing anything wrong.

For his part, Archuleta testified that he did review Trevino's returns with her, and that she visited his office regularly to go over the monthly profit and loss statements. He testified that typically Trevino would come in and go over each tax return before it was filed. He specifically testified that he reviewed his initial version of Trevino's 1991 tax return with her, and that she complained that the tax liability reflected on it was too high. He testified that she instructed him to reduce it, and that he did so by increasing the cost of goods sold in that tax year. The revised return, reflecting more cost and less profit, was filed with the IRS on Trevino's behalf. Indeed, even Trevino's Brief is replete with references to trial testimony supporting the finding that she was a willing and active participant in falsely increasing the cost of goods sold in order to reduce her profit and her tax liability.

The jury found her guilty on all three counts: conspiracy to defraud for the 1989-1992 tax years; evading a tax for 1991, and evading a tax for 1992. Trevino moved for a new trial following the verdict, arguing that the trial court erred in failing to give a "good faith" defense instruction, and that Jury Instruction 44 as given was a misstatement of the law. She also objected to the prosecutor's claim in his rebuttal argument that her attorney was "wrong" when he claimed that Archuleta did not increase the cost of goods sold by $150,000.00.

Trevino's motion for a new trial was denied and she was sentenced to 10 months in jail. She appeals on all three bases.

## II.

### 1.  Good Faith Defense.

Trevino argues that the district court erred in failing to instruct the jury that her good faith belief that her tax returns were proper was a complete defense to the charges against her. We review de novo whether a District Court's instructions to the jury adequately address a defendant's theory of defense. *United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000); *United States v. Hooper,* 177 F.3d 824, 831 (9th Cir. 1999).

The government's burden of proving willfulness

> requires negating [1] a defendant's claim of ignorance of the law *or* [2] a claim that because of a *misunderstanding of the law,* he had a *good-faith belief* that he was not violating any of the provisions of the tax laws. This is so because one cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist.

*Cheek v. United States*, 498 U.S. 192, 202, 111 S. Ct. 604, 112 L. Ed.2d 617 (1991) (emphasis added).

**[1]** There is, then, a difference between an "ignorance" defense and a "good faith misunderstanding" defense. In order to rely on a good faith defense, the defendant must in fact have some "belief;" either that her own understanding was correct, or that she in good faith relied on the tax advice of a qualified tax professional. *See United States v. Bishop*, 291 F.3d 1100, 1106-07 (9th Cir. 2002).

Trevino did not claim the former, and while she claims she relied on Archuleta, it is her position that he gave her no advice or guidance of any sort. Instead, she claimed she did not know, did not ask, and was not told what Archuletta was doing. She claimed to be an unknowing and involuntary participant in a scheme that benefitted only her.

**[2]** The jury was instructed that "an act is done knowingly if the defendant is aware of the act, and does not act or fails to act through *ignorance, mistake*, or *accident*." "It is not reversible error to reject a defendant's proposed instruction on his theory of the case, if other instructions, in their entirety, adequately cover that defense theory." *United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994) (*citing United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990)). The instructions allowed Trevino to argue her theory of the case — that her ignorance (and not her misunderstanding of the law) precluded her from willingly evading a tax.

**[3]** Furthermore, the instruction proposed by Trevino does not address the good faith defense that Trevino suggests here — that she relied in good faith on the tax advice of a qualified tax professional. There was no error in the court's failure to give Trevino's proposed "good faith defense" jury instruction. *See United States v. Shipsey*, 363 F.3d 962, 967-968 (9th Cir. 2004).

## 2.  Prosecutorial Misconduct.

Trevino claims that the prosecutor engaged in misconduct requiring a new trial. She claims the prosecutor misstated the evidence when he argued in rebuttal that "defense counsel was wrong in stating that Mr. Archuleta did not increase the cost of goods sold by $150,000.00."

A trial court's ruling on a claim of prosecutorial misconduct, where the defendant did not interpose an objection, is reviewed for "plain error." *United States v. Sarno*, 73 F.3d

1470, 1496, 1496 (9th Cir. 1995). The inquiry is whether the allegedly improper behavior, considered in the context of the entire trial, affected the jury's ability to judge the evidence fairly. *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir. 1985).

[4] Trevino has not articulated precisely what was incorrect about the prosecutor's argument. However, even if the prosecutor's view of the evidence on this limited point was wrong, it cannot be said that his short statement permeated the trial or had any ability to prevent the jurors from evaluating the evidence fairly from their own recollections of it.

[5] Numerous courts have held that where the veracity of various testimony is at issue, it is fair play to argue that one side is not telling the truth. *See*, *e.g.*, *Sarno*, 73 F.3d at 1496 ("It is hardly surprising that, in a case turning upon the 'falsehood' of certain representations, the prosecution would attempt to persuade the jury that those representations were in fact lies.").

[6] Trevino has not met and cannot meet the high burden of demonstrating a "plain error" that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed.2d 1 (1985). Trevino is not entitled to a new trial based on her claim of prosecutorial misconduct.

## 3.   Erroneous Presumption Instruction.

Trevino's final argument is that Jury Instruction No. 44 violated her right to due process because it impermissibly created a presumption of her knowledge of the contents of her erroneous 1992 tax return.[1] We review de novo whether a

---

[1]Trevino argues that the erroneous instruction requires reversal of her convictions on all counts. The erroneous instruction, however, could not have impacted jury deliberations on count two, which solely concerned Trevino's 1991 tax return.

given instruction violates due process by creating an unconstitutional presumption or inference. *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994).

**[7]** Jury Instruction No. 44 was taken from the U.S. Dept. of Justice *Criminal Tax Manual*, § 8.04[1] (7th ed. Supp. 2001). It instructed the jury that the defendant's signature on a return created a rebuttable presumption that she signed it and had knowledge of its contents:

> A return or other tax document signed with the defendant's name creates a rebuttal [sic] presumption that the defendant actually signed it and had knowledge of its contents.

**[8]** However, 26 U.S.C. § 6064, the statute upon which Instruction No. 44 was purportedly based, contains no such presumption. The government concedes that the statute does not "directly support" the Department of Justice's Instruction. 26 U.S.C. § 6064 provides instead that an individual's signature on the return is prima facie evidence that the return was actually signed by that individual:

> The fact an individual's name is signed to a return . . . shall be prima facie evidence for all purposes that the return . . . was actually signed by him.

26 U.S.C. § 6064. It was therefore error to give the government's Instruction No. 44.

Not all federal constitutional errors that occur in the course of a criminal trial, however, require reversal. *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). Most are amenable to harmless-error analysis. *Id.* at 279; *United States v. Montalvo*, 331 F.3d 1052, 1056-1057 (9th Cir. 2003). A structural defect, mandating automatic reversal, occurs when the government has been relieved of its burden to prove the elements

of the crime charged beyond a reasonable doubt.[2] *Sullivan*, 508 U.S. at 281; *Gibson v. Ortiz*, 387 F.3d 812, 825 (9th Cir. 2004). The erroneous instruction here is subject to harmless error review because the defendant's knowledge of the specific contents of her tax returns is not an element of the offense and the jury was properly instructed on the government's burden of proof for each element of the offense.[3] Where the presumed fact is not necessary for the verdict, we assess the evidence for alternative facts sufficient to prove the element for which the presumed fact was proffered. *Yates v. Evatt*, 500 U.S. 391, 404 n.9 (1991).

[9] To sustain a conviction on count one, under the indictment the government was required to prove beyond a reasonable doubt that Trevino knew her 1992 income tax return "understated the amount of income tax due." And for count three, the government was required to prove beyond a reasonable doubt that Trevino knew more federal income tax was

---

[2]Alternatively, Trevino argues, citing our recent decision in *Martinez v. Garcia*, 379 F.3d 1034 (9th Cir. 2004) that structural error occurred because she was convicted under two conflicting instructions, one proper and one erroneous. We do not agree that the instruction at issue here was "one of two grounds" that supported Trevino's conviction. Unlike in *Martinez* where it was impossible to tell from the verdict form whether he was convicted on the basis of premeditation (permissible theory) or transferred intent (impermissible theory), there was no such binary choice between the two instructions at issue here. Trevino's argument that an impermissible presumption creates two theories is incorrect. *Cf. Sullivan*, 508 U.S. at 281 (noting that even a mandatory presumption that goes to an element of the offense may by harmless).

[3]If, as the dissent mistakenly contends, the erroneous presumption relieved the government of proving an essential element of the crime charged, the defect is structural; therefore, it is meaningless to engage, as the dissent appears to do, in harmless error analysis. *Sullivan*, 508 U.S. at 280. While *Sullivan* does permit harmless error review for some mandatory presumptions, the presumption here is not one where the predicate fact (signing the return) is so closely related to the presumed fact (knowledge of the return's contents) that it is the functional equivalent of the presumed fact. *Id.* at 281.

owed than was declared due on her income tax return.[4] Ninth Cir. Crim. Jury Inst. 9.35 (2000). In order to know more federal income tax was owed than was declared, it is not necessary to know the precise contents of the return that was filed or have specific knowledge of the amount declared due. A defendant's knowledge that she is paying less than the amount declared may be inferred when the defendant knows her accountant is following her instructions to significantly reduce the profits reported to the IRS.

**[10]** There was such evidence here. Archuleta testified repeatedly that Trevino instructed him to reduce her tax liability and that he did so by changing the cost of goods sold component of the net profit calculation on each return's Schedule C. He testified that on at least two occasions, he showed Trevino what he had done, and she complained to him that the tax liability was still too high, and instructed him to reduce it further. This testimony was supported by documentary evidence in the form of numerous profit and loss statements showing profits many multiples of the amounts ultimately reported to the IRS, and multiple versions of various tax returns.

**[11]** Indeed, Trevino was also convicted on count two — an identical charge to count three but based on her 1991

---

[4]The Dissent would reverse and remand on both count three (tax evasion for 1992) and count one (conspiracy to defraud for all four tax years). It reasons that it is not possible to determine from the verdict form whether the conspiracy conviction was based on the overt act of filing the 1992 return, knowing that it understated the amount of tax due. It argues that *Martinez*, 379 F.3d 1034, requires reversal where the conviction might be based on such an impermissible theory.

For the reasons articulated with respect to count one, the erroneous instruction did not relieve the government of its burden of demonstrating beyond a reasonable doubt that Trevino knew she owed more than the amount reflected on the 1992 return. It does not, therefore, amount to an impermissible theory and does not require reversal of Trevino's conviction on either count.

return — where the government conceded she did not sign the return and there was no additional evidence she knew the precise amount declared due. Consequently, it was not necessary for the government to prove Trevino knew the precise contents of her 1992 return. It was enough that she knew that the tax return understated the amount of tax which properly should have been due.

[12] Therefore, the instruction's erroneous presumption that Trevino knew the amount shown on her return did not relieve the government of any material burden, and was thus harmless in light of the instructions as a whole. It does not require a new trial.

## 4. Sentencing.

[13] Trevino also requests a remand pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005). The district court sentenced Trevino under the reasonable, but mistaken, belief that the sentencing guidelines were mandatory. That was error of a nonconstitutional nature. *See Ameline*, 408 F.3d at 1084 n.8. Based on this record, we cannot discern whether the error affected Trevino's substantial rights. *See id*. at 1084. Accordingly, we remand the sentence to the district court for proceedings consistent with *Ameline. See United States v. Moreno-Hernandez*, 2005 WL 1560269, at *9 (9th Cir. Jul. 5, 2005).

The sentence is REMANDED to the district court for proceedings consistent with *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005)(en banc).

**CONVICTION AFFIRMED; SENTENCE REMANDED.**

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the majority opinion, except Part II.3. Because I cannot agree with the majority that the admittedly erroneous "presumption" instruction was harmless, I respectfully dissent in part. Because I do not find the error to have been harmless, I also dissent from so much of the court's judgment as affirms the convictions on Counts One and Three. I agree, however, with the majority that the erroneous instruction was harmless as to Count Two. I therefore concur in the affirmance of the judgment of conviction on that count.

Defendant was charged with two counts of attempting to evade income taxes, 26 U.S.C. § 7201, and one count of conspiracy to defraud the government, 18 U.S.C. § 371, by filing false income tax returns. The 1992 tax evasion count, Count Three, was based on the filing of a false return, which was signed by defendant.[1] The government secured an instruction from the district court that "a return . . . signed with the defendant's name creates a rebuttable presumption that the defendant . . . had knowledge of its [the tax return's] contents." The government now virtually concedes that the instruction is erroneous.[2]

One of the elements the government was required to prove beyond a reasonable doubt, to prove a § 7201 offense, is that "defendant *knew* that more federal income tax was owed *than was declared due* on the defendant's income tax return."

---

[1] Defendant apparently did not sign her 1991 return on which Count Two was based.

[2] Although not making a complete concession, the government concedes on appeal that "[t]he defense correctly notes that the statutory authority (26 U.S.C. § 6064) provided in support of Jury Instruction 44 does not directly support the language of the instruction." In defense of its having sought the instruction, the government pleads that it "was obtained directly from the current version of the United States Department of Justice Tax Manual. Criminal Tax Manual, 2001 Version, Section 8.04[1]."

Ninth Cir. Crim. Jury Inst. 9.35 (2000) ( emphases added). Thus, an essential part of the required knowledge is knowledge of what was "declared due" on defendant's return. The erroneous presumption instruction effectively relieved the government of its burden of proving that defendant possessed such knowledge — an essential element of the crime charged. The majority concedes as much, acknowledging that in order to sustain a conviction on Count Three, "the government was required to prove beyond a reasonable doubt that Trevino knew that more income tax was owed *than was declared* on her [1992] income tax return." Slip op. at 10697-98 (emphasis added). The majority attempts to evade the force of that concession by arguing that "[i]n order to know more federal income tax was owed than was declared, it is not necessary to know the precise contents of the return that was filed or have specific knowledge of the amount declared due." *Id.* at 10698. It also argues that "[a] defendant's knowledge that she is paying less than the amount declared may be inferred when the defendant knows her accountant is following her instructions to significantly reduce the profits reported to the IRS." *Id.* The evidence it points to in support of this assertion, however, all concerns tax years other than 1992. Moreover, even if the evidence supported such an inference, the erroneous instruction told the jury that such evidence need not be weighed and such an inference need not be drawn — the jury simply could rely on the presumption. In short, the majority is able to find harmlessness only by ignoring a required element of the offense.

Given that defendant's entire defense was that her tax returns were prepared by her accountant and that she was ignorant of their contents, the majority's conclusion has no grounding in the law or in the record of this case. The government offered no evidence to prove that Trevino had knowledge of the contents of her 1992 tax return prepared by her accountant — all it had to prove this element was the erroneous presumption. What we recently said in *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004), applies here:

> When a court gives the jury instructions that allow it to convict a defendant on an impermissible legal theory, as well as a theory that meets constitutional requirements, "the unconstitutionality of any of the theories requires that the conviction be set aside."

*Id.* at 825 (quoting *Boyde v. California*, 494 U.S. 370, 379-80 (1990)).

The majority is also mistaken in concluding that the erroneous instruction was harmless as to Count One, the conspiracy count. It asserts that "[t]he erroneous instruction did not relieve the government of its burden of demonstrating beyond a reasonable doubt that Trevino knew she owed more than the amount reflected on the 1992 return." Slip op. at 10698 n.4. Respectfully, I cannot agree. One of the overt acts, Overt Act Six, that the government was required to prove beyond a reasonable doubt in order to convict defendant of the Count One conspiracy was that she filed a tax return for 1992 "knowing that such return was false in that it understated the amount of income tax due . . . ." Indictment at 5. To paraphrase the majority's discussion of *Martinez v. Garcia*, 379 F.3d 1034 (9th Cir. 2004), "it was impossible to tell from the verdict form whether [Trevino] was convicted on the basis of [Overt Acts One through Four] (permissible theory) or [Overt Act Six (filing the 1992 return)] (impermissible theory)" on Count One. Slip op. at 10697 n.2. Thus, given this "binary choice," the error is not harmless as to Count One, and reversal is required. *See id.* at 1039.

Because the giving of Instruction No. 44 was not harmless error as to Counts One and Three — under any standard — I would reverse the conviction on those counts, and remand for a new trial. A *Booker/Ameline* remand would still be appropriate on the remaining count.