TARNOW, Senior District Judge,
dissenting.
Although I concur in part with the majority, I cannot agree with the majority’s analysis or conclusion with respect to section III.B. The Tennessee Court of Criminal Appeals (TCCA) was wrong in finding that the erroneous jury instruction was merely irrelevant. Because I would conclude that the error was of constitutional magnitude, amounting to a structural error, I dissent. The majority concludes that because the juvenile code was not *710 mentioned in closing arguments and because there is an interpretation of the closing arguments that could have supported a conviction, that there was nothing improper about the government’s closing argument. Whether the juvenile code was mentioned or not, however, is not the decisive issue when deciding whether Petitioner’s due process rights were violated.
“We review the district court’s legal conclusions de novo and its factual findings for clear error.” McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir.2004) (citation omitted). The district court, in this case, made only conclusions of law. See R. 84, Mem. Order, at 13. Therefore, the present appeal should be reviewed under a de novo standard, with no deference to the district court’s ruling. See Barker v. Yukins, 199 F.3d 867, 870 (6th Cir.1999).
“The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense.” Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). “Jury instructions relieving States of this burden violate a defendant’s due process rights. Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases.” Carella, 491 U.S. at 265,109 S.Ct. 2419 (internal citations omitted).
A conviction must be set aside if a case is submitted to a jury on an impermissible theory, even when alternate permissible theories were also presented. Boyde v. California, 494 U.S. 370, 379-80, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In such a case, including permissible and impermissible theories, “it is possible that the guilty verdict may have had a proper basis, ‘it is equally likely that the verdict ... rested on an unconstitutional ground,’ ... and we have declined to choose between two such likely possibilities.” Id. A jury instruction allowing a jury to convict on alternate theories — one of which is based on an impermissible legal ground — constitutes a structural error. See Carella, 491 U.S. at 265, 109 S.Ct. 2419; see also Martinez v. Garcia, 379 F.3d 1034, 1040 (9th Cir.2004).
Petitioner argues that, at the direction of the prosecution, the trial court instructed the jury that it could convict him on an impermissible theory — one that relieved the government of its burden to prove each element of the crime beyond a reasonable doubt. Hodges was convicted of first-degree murder based on Tennessee’s felony-murder statute and the underlying felony offense of aggravated child abuse. The Tennessee Court of Criminal Appeals (TCCA) described three possible theories of culpability to Hodges’ jury — two theories of direct responsibility and one indirect. State v. Hodges, 7 S.W.3d 609, 620-23 (Tenn.Crim.App.1999). The jury was advised that felony murder culpability for first-degree murder could be established directly by proving either:
that Hodges intentionally delivered blows to Miyoshi which proved fatal; or that Hodges, while serving as Miyoshi’s sole caretaker and knowing she was “in serious medical trouble,” took no action to provide for emergency medical attention, allowing her to suffer a “serious bodily injury” (here, death).

Id.

The third theory of culpability was based on the Tennessee criminal-responsibility statute. The Tennessee criminal-responsibility statute (T.C.A. § 39 — 11— 402(3)) states:
Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to *711 benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.
TenmCode Ann. 39-11-402(3) (1995). Under the criminal-responsibility statute, the jury could have convicted Hodges for the underlying acts of Kena if the jury found that Hodges had a duty to prevent serious bodily injury, intended to assist or promote serious bodily injury, and failed to make a reasonable effort to prevent such injury. Hodges, 7 S.W.3d 609, 623-24. In other words, Hodges could have been convicted of first-degree murder if the jury believed that while he was serving as Mi-yoshi’s sole caretaker, knew that she was in serious medical trouble and failed to make reasonable efforts to obtain emergency medical care.
Hodges’ theory of defense was that he did not recognize Miyoshi’s need for medical care. His defense was supported by 1) his own statements that he did not know of a need for emergency medical care; 2) evidence that Kena Hodges was a nurse’s aide, with superior medical knowledge than Hodges’; 3) testimony of Kena Hodges’ coworkers to support his assertion that Kena made Hodges’ think there was no medical emergency; and 4) expert testimony stating that Miyoshi would have had slight internal bleeding and that her injuries would likely make her seem like she was irritable, lethargic, and sleepy. Hodges attempted to use the evidence to support his defense that although he knew Miyoshi had suffered some harm, he relied on Kena Hodges’ advice and her medical knowledge as a nurse’s aide to conclude that Miyoshi did not need emergency medical care.
If the jury had only been presented with the three permissible government theories, Hodges would have had a meaningful and viable defense. He, however, did not because of the impermissible jury instruction that was given at the request of the prosecution and with the consent of the trial court judge. Instead of seeking an applicable jury instruction, the prosecutor sought and obtained an instruction that should have never been given — one that deprived Hodges of a fair trial and relieved the government of its burden to prove each element of the crime beyond a reasonable doubt.
The prosecutor successfully obtained a jury instruction on the Juvenile Code’s duty to report any injury that may be a result of child abuse. The jury instruction stated:
Any person having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect shall report such harm immediately by telephone or otherwise to [state authorities]. Persons includes, but is not limited to neighbor, relative, friend or any other person.
R. 49, Notice of Filing Record, Trial Tr. Vol. VIII at 112 (emphasis added).
The TCCA has correctly held that it this jury instruction should not have been given and that it was improper to link it to this duty to the criminal-responsibility statute to support an alternate theory of liability. Hodges, 7 S.W.3d at 627 (“Failing to report child abuse, by its terms, is an altogether different proposition and does not satisfy this prong of criminal responsibility.”) (emphasis in original).
In Hodges’ case, the inclusion of the Juvenile Code’s rigorous reporting duty in conjunction with the criminal-responsibility *712 statute could have reasonably led the jury to convict Hodges based on his failure to report child abuse — a theory which would not support a conviction for felony murder. If the jury convicted Hodges on this theory, then his defense was essentially meaningless and the government was relieved of its burden at trial by converting the alleged crime to one of strict liability.
On January 9, 1997, the trial court discussed the charges requested on the record. R. 49-9, Notice of Filing Record, Trial Tr. Vol. VII at 951-70. The record shows that the government intended for the jury to convict on the duty to report child abuse when linked with the criminal-responsibility statute. During closing arguments the prosecutor attacked Hodges’ defense by relying on the criminal-responsibility statute for a conviction. She stated to the jury:
The Judge is going to instruct you about criminal responsibility. And it’s sort of hard to understand, criminal responsibility for the conduct of another.... But look at what we really have here. Having a duty imposed by law. Remember in jury selection when I told you every person had the duty under law. Well, the Judge is going to charge you about the duties that people have to protect children from being abused. He’s going to tell you what the code says about that. And he’s going to tell you what, if you apply the law, that Anthony Hodges should have done, even if he hadn’t struck one blow to this child. Having a duty imposed by law and acting with the intent to benefit in the proceeds or results or to promote or assist in its commission, fails to make a reasonable effort to prevent the offense. If you believe [defense counsel’s] closing argument, you can convict Anthony Hodges of first degree murder as being criminally responsible. He didn’t do anything. If he really and truly sat there that night and listened to her beating this child and didn’t do anything, then he is criminally responsible for her conduct, even if eve'rything else he did was coirect.
R. 49-10, Notice of Filing Record, Trial Tr. Vol. VIII at 63-65 (emphasis added).
The prosecutor’s mistake of the applicable law, which was accepted by the trial court judge, should not be minimized. If a prosecutor and a trial judge were confused as to the applicability of the jury instruction, it is clear that jurors would be confused as well.
Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.
Boyde, 494 U.S. at 380-81, 110 S.Ct. 1190.
We have no way of knowing upon which theory each juror convicted Hodges. It is possible, however, that the jurors may have been just as confused as the prosecutor and trial judge. The jury may have relied on the incorrect jury instruction. The jury was instructed that a person who has knowledge that a child has suffered an injury has a duty to report abuse under the Juvenile Code. The jury was further instructed that if one has a “duty under the law” — a phrase used by the prosecutor in closing argument — even if Hodges did nothing affirmative and the jury sincerely believed the defense, then they could have convict him of first degree murder. If the jury believed the defense, applied the theory proposed by the prosecutor during her closing argument, and focused on the duty under the law to report child abuse, it is very possible that one or more jurors may have convicted Hodges under a theory of *713 criminal responsibility for a failure to report possible child abuse, which is unconstitutional.
“ ‘Because a jury’s deliberations are secret and unreported, we have no way of determining’ which theory of conviction was the basis of the jury’s guilty verdict.” Martinez, 379 F.3d at 1040 (citing Ho v. Carey, 332 F.3d 587, 596 (9th Cir.2003)). I would find that the error in the jury instructions was so fundamental that it constitutes structural error, requiring reversal. See Boyde, 494 U.S. at 379, 110 S.Ct. 1190.
I respectfully dissent.